# OCTOBER TERM, 1871, AT DETROIT.

## (CONTINUED FROM VOLUME XXIII.)

————◆————

## Joseph Strang v. The People.

*Evidence: Rape.* Evidence of the relationship of the prosecutrix to the defendant, on trial for the offense of rape, is competent.

Upon the trial of an information for rape, evidence of conversations between the accused and the prosecutrix, either immediately before or after the commission of the offense, is competent to explain why she made no physical resistance.

Evidence that the prosecutrix made immediate complaint after the offense, is important; and facts showing her appearance,—marks of violence or other indications of outrage,—and also that she had reason to fear danger to life or limb if she resisted the assault upon her, are admissible, even though the facts be such as to show a complete offense of a similar character committed on a previous occasion.

Evidence of criminal intercourse between the prosecutrix and a person other than the defendant, is admissible for purposes of impeachment; but not evidence of particular facts from which, because they tend to render it probable, such intercourse may be inferred.

*Examination of Witnesses: Impeachment.* For the purpose of impeaching a witness, he was asked whether certain conversations, at a specified time and place, were had between him and the defendant, which were supposed to relate to the testimony he was expected to give, to which he replied that he did not know of their taking place; and he was then asked whether he was not drunk at the time:—

*Held,* That the circumstances justified the exercise of a liberal discretion by the court, to allow the proof by other witnesses that the conversation did take place, and that the witness was intoxicated.

*Immaterial evidence.* It is the duty of the court to exclude irrelevant testimony; but when that is admitted which can have had no possible influence in bringing the jury to believe the defendant guilty, or to prejudice them against him or his witnesses, and the court can see that harm could not result, the judgment will not be reversed.

*Criminal law: Rape.* To authorize a conviction for rape, the jury must believe that the offense was accomplished by force and against the will of the prosecutrix, and that there were the utmost reluctance and resistance on her part; or that her will was overcome by fear of the defendant. If the jury entertain a reasonable doubt of such reluctance and resistance they must acquit.

All persons aiding and assisting in the commission of a rape are principals, and may be indicted and convicted jointly.

*Heard October 20. Decided October 31.*

Error to Hillsdale Circuit.

Joseph Strang and George H. Williamson were charged, on the information of the prosecuting attorney of Hillsdale county, before the circuit court for the county of Hillsdale, with the offense of rape, committed upon Lovisa Towers. Strang was tried separately and convicted; and judgment having been entered on the verdict, the case comes into this court by writ of error.

*E. L. Koon* and *C. A. Stacy*, for plaintiff in error.

*Dwight May, Attorney-General*, for the People.

COOLEY, J.

The defendant and George H. Williamson were jointly informed against as principals in a rape upon one Lovisa Towers. This defendant was tried separately and convicted, and he now brings the record to this court, assigning fifty-three errors. A number of these were not insisted upon on the argument, but those which were are so numerous that it will be convenient to consider them in connection with a statement of the proceedings as they took place on the trial.

Lovisa Towers, the prosecutrix, being placed on the stand, testified that she knew the defendant and had resided in his family. She was then asked what relation the defendant was to her, if any. This question was objected to, but allowed, and she replied that he was an uncle by marriage.

The reason assigned for the objection to this question is, that the relationship is an immaterial fact, but that the tendency of the proof of it must be to excite a prejudice against a defendant whom the nature of the charge always places sufficiently at a disadvantage, and whom it should be

the aim of the law to guard against any circumstances, which, by possibility, might prevent a calm and dispassionate investigation of the charge by the jury. We think, however, that the danger of creating prejudice by such evidence, is not sufficiently imminent to excite alarm. The relationship may be a fact of importance in the case, as bearing upon the reasonableness of the woman's story, and upon the probability of the resistance having been all that was to have been expected if her complaint is well founded. We have no doubt it was a proper circumstance for the prosecution to prove.

The witness proceeded to state that Williamson came to her mother's house on the evening of the fifth day of June, 1870, and asked her to go with him to meeting. She consented, and they started in a buggy. About half a mile north of the house, they met the defendant, who stopped the horse and told Williamson to get out. Witness jumped out of the buggy, and defendant caught her and told her to get in again. She said she did not want to, but wanted to go home. He said she had got to go with him. The defendant took hold of her arm and went to push her into the buggy, and then she got in. Defendant made Williamson get out, and told witness he had got her where he wanted her, and she should go with him. Williamson said he would go home, and started to do so, as witness supposed, and defendant drove up to the woods and stopped, and told her to get out. She said, " What are you going to do with me?" and he said she would soon find out when she got out of there. He took her out, took his coat off and laid it on the ground, took hold of her and laid her down on it. He told her to take off her drawers, and not daring to do different, she took them partly off. Defendant told her before she got into the woods that if she did not go with him and do as he wanted her to, he would take her where

no one would know her fate. He said this more than once. She commenced to halloo at the edge of the woods, and he said it would be of no use to halloo; it would be all the worse for her. No house was in sight. She was then six- teen years old. She took off her drawers because she did not dare to do otherwise. Then he had intercourse with her. She was then asked what he did or said immediately after the intercourse. This question was objected to as immaterial, but very properly allowed. She replied by nar- rating the facts of his compelling her to submit to the embraces of Williamson, who soon came up as if by con- cert.

The witness was further asked why she allowed Strang to have intercourse with her. The question was objected to, but allowed, and she replied that she did not dare do any other way, because he said he would take her where she would not get back home again. She was afraid he would take her off and kill her. The question and answer were entirely proper, as showing the state of mind of the witness, and explaining why she made no physical resistance.

The witness further testified that she told her mother what defendant had done to her, when she got home. On her cross-examination she said she worked for defendant two years previous to the trial. She had not seen him to speak to him from December 9, 1869, to the time of this occurrence; did not remember testifying on the examina- tion of defendant, before the justice, that she had connection with defendant because he threatened her, not then, but at another time; did not remember testifying that he did not say he would take her where no one would know her fate, on the fifth of June; but he did say so on the ninth of December; did not remember that she told defendant if he would take her right home he might have connection with her. She asked defendant to take her home, and he

said he would if she would let him have connection with her, and he immediately after that had connection with her. The two men took her home in the buggy: did not remember talking about getting a dress at Litchfield when they were going home, and that she owed a dollar and eighty cents for it, and wanted defendant to let her have the money to pay it; but she did speak about the dress before she started. The witness was then asked whether she had not slept with one Whitehead, and had sexual intercourse with him, and she replied that she had not.

Sophronia Towers, the mother of the prosecutrix, testified to her coming on the evening of the fifth of June, and that she looked as though she was badly abused, and entirely exhausted and frightened. She complained of the abuse; said defendant had abused her, and told what he had done. Witness sat up with her all night. She looked feeble and did not sleep. All this evidence was objected to by defendant, but we think it admissible both on reason and on authority. The fact of immediate complaint is always of importance in these cases, and the appearance of the woman, and whether she bears upon her person marks of violence or other indications of an outrage of the nature complained of, may also be shown.—*McCombs v. State, 8 Ohio, N. S., 643; State v. Knapp, 45 N. H., 149; 1 Phil. Ev. by Cowen, Hill & Edwards, 148.* The particulars of the complaint were not called for in this case, so that no question arises concerning the propriety of permitting the mother to state them.

The prosecutrix was then recalled and recapitulated some of the facts of the case, and was also allowed, under objection, to state that she was afraid of defendant because it run in the family to kill folks, and because she had seen him abuse his wife so. We think any evidence which would show reason in the witness for fearing danger to life or

limb from the violence of the defendant should have been received. If she had seen him treat his wife with violence, that fact would naturally tend to put her in fear of him, and incline her to believe the threats he made against her were serious. What the nature of the abuse of his wife was, or what the witness meant by its running in his family to kill folks, we do not know; but the defense could have called out an explanation had they desired it. What we understand from the evidence is, that the witness believed the defendant to be a dangerous man, who inherited violent passions or homicidal inclinations.

The witness was then asked to state fully the particulars of what occurred on the 9th of December. This was objected to, but allowed, and she stated the facts of a rape which she said was committed upon her on that day by the defendant, and added, that she immediately communicated the particulars to two women, whom she named, but by their advice refrained from mentioning it further. This rape was accomplished by threats of personal violence. We think the evidence admissible as explaining, to some extent, the fear the witness was under, and as tending to account for her submission to his will when he took her to the woods on this occasion. In submitting it to the jury, the judge instructed them that they were to regard it for that purpose only.

For the defense, Whitehead, with whom the prosecutrix had denied having had sexual intercourse, was called, and testified that he did have such intercourse in the fall of 1869, being then engaged to marry her. He was then asked whether he did not on a certain occasion lie on the bed with her and take improper liberties with her person. On objection by the prosecution, the court overruled the question. The argument for its admission was, that an affirmative answer would tend to render more probable his

evidence of actual intercourse. The fact of such intercourse, however, was collateral to the issue on trial, and the court went quite as far as the law would sanction in allowing him to testify to it. The prosecutrix could not be supposed to have come prepared to meet charges of this character, and though the defense might question her regarding them, the right to go into proof of particular facts is not very clear. See *People v. Jackson, 3 Park., 391; McCombs v. State, 8 Ohio, N. S., 643; McDermott v. State, 13 Ohio, N. S., 332; State v. Jefferson, 6 Ired., 305; State v. Forshner, 43 N. H., 89; State v. Knapp, 45 N. H., 148.* But after the defense had been allowed to give evidence of the particular fact, there is no rule that could sanction the calling of witnesses to prove other facts, simply because they tended to render such particular fact more probable; thus supporting one collateral issue by establishing another.

To impeach this witness, the prosecution was permitted to inquire of him about his being at a hotel the evening before the trial, and asking to be trusted for liquor, and whether the defendant did not step up and say he would pay for the liquor, and tell the witness to go in to-morrow and do as he, the defendant, had told him. The witness said he did not know of these things having taken place. He was then asked whether he was not drunk at the time, and he replied he was not. The prosecution was afterwards allowed to call witnesses to show that the alleged occurrence at the hotel did take place, and that Whitehead was seen intoxicated the same evening, in the street and elsewhere.

So far as this evidence related to the occurrence at the hotel, it was admissible by way of impeachment. We are inclined to think, also, that the prosecution might properly be allowed to show Whitehead's intoxication. He had not denied the alleged transaction between himself and the

defendant, but had sworn only that he did not know of its having taken place; and proof that he was in a condition in which he would not fully comprehend what he was doing and saying, and what defendant was saying to him, taken in connection with the fact that defendant was contributing to that condition so short a time before he was to be called upon the stand, and avowedly with reference to something he was expected to do for defendant, would not be without significance. We think the circumstances warranted a liberal exercise of discretion by the judge, especially in view of the very discreditable evidence which Whitehead had given on his examination in chief.

The defendant's wife was called as a witness on his behalf, and testified that she had witnessed sexual intercourse between the defendant and the prosecutrix, without objection by the latter, previous to the alleged offense. She also testified that when the prosecutrix lived with them, she slept habitually in the bed with herself and her husband. On cross-examination she was asked whether, when the present charge was made against her husband, she did not say if it was true she would not live with him another day. She replied that she had said she did not believe it, but did not threaten to leave him. This question and reply were objected to by the defense, but upon what ground is not very apparent. The answer could neither injure defendant, nor tend to add to the discredit the testimony in chief would be calculated to bring upon the witness.

When the case was again handed over to the prosecution, evidence was admitted to show that defendant's wife had required the prosecutrix to sleep in the bed with her husband and herself, without any necessity therefor, and also that on one occasion she asked the girl to go alone into the bedroom where the defendant would soon come, and see what he would do. This last was received by way

of impeachment, the wife having previously been interrogated on the subject. The other was admissible, not only because its tendency was damaging to the testimony of this witness, but because, if true, it would fix upon the right persons the responsibility for the shameful appearances and mode of living while the prosecutrix was in the defendant's family.

The mother of the prosecutrix was again called to the stand, and allowed, under objection, to state that before Williamson and her daugher started out on the fifth of June, the latter spoke of her purchase of the dress at Litchfield, and of her indebtedness for it. This is complained of as being an attempt to give credit to the evidence of the prosecutrix by corroborating her on an immaterial point. It was put in, probably, because of the inquiry by the defense of the prosecutrix, whether this remark was not made by her while the three were in the buggy together after the alleged outrage. She denied that it was made at that time. Had there been any evidence contradicting her denial, this testimony of the mother might have had a tendency to support the girl's statement, and to cast doubt upon the truth of that given to contradict her; but in the absence of such evidence, and while the girl stood uncontradicted, we do not see how this evidence of the mother could have been of the least importance. It was no more likely to affect the result than evidence of any idle remark that a third person might have made, as foreign as this, to the subject under investigation. It is the duty of the court to exclude with care any irrelevant testimony; but when that which was admitted can have had no possible influence in bringing the jury to believe the defendant's guilt, or to prejudice them against him or his witnesses, and the court can clearly see that harm could not result, the judgment ought not to be

reversed. It is possible to be so nice in such matters as to render a legal conviction of crime practically impossible; and while the court should see to it on the one hand that no wrong shall be done the defendant, so on the other they are not to set aside a conviction obtained on a fair trial, because, in some unimportant particular, the judge presiding at it has departed from strict technical accuracy in his rulings.

Several of the objections to evidence taken and insisted upon we have not considered in detail, because they seemed to us so clearly untenable that no discussion of them was needful. We refer particularly to those made to the admission of evidence of the circumstances immediately preceding and following the transaction in question, and which tended to characterize it; such as what was said by Williamson when he called for the prosecutrix to go out with him, and what was done after the connection with defendant before the prosecutrix was taken home. This evidence was not only admissible, but it was the plain duty of the prosecution to put it in. Upon this point we refer to what is said in *Brown v. People, 17 Mich., 433,* which is as applicable to cases of rape as of homicide. To separate the *corpus delicti* from all its antecedents and consequents, and present by the evidence to the jury only what occurred at the precise time and place of the consummation of the outrage, would be in the highest degree illogical, when the opposing will on the one side, and the felonious intent on the other are in question; upon neither of which, in some cases, would light be thrown except by the aid of what had taken place between the parties before, or by what followed. One thoroughly subdued by fear might seem to be consenting, when evidence of what had caused the fear might make the felony plain. Nor is it any objection in this case that a part of the antecedent facts took place

between Williamson and the prosecutrix when defendant was not present. The concert of action between Williamson and the defendant to commit the offense was, if the evidence was believed, sufficiently made out to justify such facts being proved.

The evidence being all in, the circuit judge was requested to charge the jury that they must be satisfied that the connection was had by force, against the will of the prosecutrix, and that there was the utmost reluctance and resistance on her part, and that if they entertained a reasonable doubt of such reluctance and resistance, it was their duty to acquit the defendant. This request was modified by the circuit judge and given to the jury in the following form: "The jury must be satisfied that the connection was had by force and against the will of the prosecutrix, and that there was the utmost reluctance and resistance on her part, *or that her will was overcome by fear of the defendant;* and if they entertained a reasonable doubt of such reluctance and resistance, it is their duty to acquit the defendant of rape."

The court would have been in error if the instruction asked for had been given. The theory of the prosecution was that the prosecutrix was forced to submit to the defendant's embraces by the terror of his threats, which was so extreme as to preclude resistance. The instruction requested would have put the case to the jury precisely as if no such threats had been made; and if accepted and acted upon by them, would have compelled an acquittal, even though the evidence for the people was fully believed. Had no putting in fear been sworn to, such a charge might have been unexceptionable; but under the evidence in this case it would have been wrong and misleading.

The following instructions were also requested by the defense:

" If the jury find from the evidence that Strang did not

threaten the prosecutrix with bodily injury, but only told her he would take her off and leave her if she did not consent to have connection with him, that does not constitute such a putting in fear as would justify the prosecutrix in having connection with defendant, neither would it make defendant guilty of rape if she consented under such circumstances.

"If the jury believe from the evidence that the prosecutrix at first objected to having connection with defendant Strang, and had determined to resist him with all her force, but voluntarily yielded by reason of promises or inducements held out to her by defendant, then they must acquit him of rape."

The objection to these instructions was, that there was no evidence justifying them. The prosecutrix, by her testimony, negatived any yielding to promises or solicitations, and no evidence from others of promises or solicitations was put in. And the threats sworn to would not bear the mild construction thus sought to be put upon them, but plainly implied something more fearful. Indeed, the very vagueness of such threats is understood, in the mouths of violent men, as implying the worst that is possible, and would be quite as likely to put in fear as any particular specification of the injury designed. The charge actually given by the judge appears to have been fair and just, and as no part of it was specially excepted to, we must suppose the defense was satisfied with it.

An objection upon which much reliance was placed was that the indictment was bad in charging two persons jointly as principals in the ravishment; the nature of the offense being such that it was impossible two should join in committing it. And although our statute provides: "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned

in the commission of a felony, whether they directly com-
mit the act constituting the offense, or aid and abet in its
commission, though not present, may hereafter be indicted,
tried and punished, as principals, as in the case of a mis-
demeanor" (*Comp. L.* § *6065*), yet it is argued that no person
can be charged as having personally joined with another in
the commission of an offense which, from its nature, could
only be committed by one; and, consequently, though one
aiding and abetting in a rape might be charged in the same
indictment with the principal felon, yet it would be neces-
sary, in charging him as a principal, to set forth the facts of
aiding and abetting, which alone would constitute him a
principal under the statute.

We are not under the necessity of considering this argu-
ment, because we have no doubt the information in this case
is good without the aid of this statute. All persons aiding
and assisting in the commission of a rape are principals in
the second degree. As such, a husband may be indicted for
the aiding and assisting in the ravishment of his wife; as in
case of Lord Audley and Castlehaven, of which an account
is given in the third volume of the State trials. And a
woman or a boy under the age of fourteen may be so
indicted.—*1 East P. C., c. 10,* § *8 ; 1 Hale P. C., 628.* But
it was never necessary to discriminate between principals
in the first and those in the second degree in the indict-
ment, provided the punishment was the same, and the
guilty act was one which admitted of participation.—*1 Wat.
Arch., 67 ; 1 Russ. on Cr., 30 ; 1 Bish. Cr. L.,* § *456.* And
in rape all present and participating in the offense were
regarded as ravishers. Thus, it is said in Russell, that
" the indictment against aiders and abettors may lay the
fact to have been done by all, or may charge it as having
been done by one and abetted by the rest. Thus, where
upon an appeal against several persons for ravishing the

appellant's wife, an objection was taken that one only should have been charged as ravishing, and the others as accessories, or that there should have been several appeals, as the ravishing by one would not be the ravishing of the others; it was answered that if two come to ravish, and one by comfort of the other does the act, both are principals; and the case proceeded. *Rex v. Vide and others, Fitz., Cor. pl. 86.* And in a modern case the form of the indictment in a charge of this kind came under the consideration of the judges. The indictment was against three persons for a rape, charging them all as principals in the first degree, that they ravished and carnally knew the woman; and the prisoners were all found guilty. The judge who tried them doubted whether the charge could be supported, and at his desire the case was mentioned by Heath J., to the other judges, and all who were present agreed that the charge was valid, though the form was not to be recommended; but they gave no regular opinion because the case was not regularly before them.—*Rex v. Burgess, Trin. T., 1813."* *1 Russ. on Cr., 687; Ibid., 30.* See also, *Ros. Cr. Ev., 809; 2 Wat. Arch., 161.* In *Rex v. Gray and Wise, 7 C. & P., 164,* Coleridge, J., sustained an indictment which in one count charged Gray as principal in the first degree in a rape, and Wise as present, aiding and abetting, and in another, charged Wise as the principal in the first degree, and Gray as aiding and abetting. In *Rex v. Crisham, 1 C. & M., 187,* the defendant was indicted alone as having aided and assisted in a rape, in which one McDonough was principal in the first degree. After conviction, it was moved in arrest that the indictment should have charged the prisoner as principal, and stated that he as well as McDonough, ravished the prosecutrix. *Folkes's case, 1 Moo. C. C.,* was cited, in which an indictment charging the prisoner both as principal in the

first degree, and as aiding and abetting other men in committing a rape, was held after conviction to be valid on the count charging him as principal. Rolfe, B., said to counsel, "Is not the prisoner so charged (*i. e.* as principal) in the indictment? It alleges that McDonough committed a rape, and the prisoner aided and assisted him. Is not that another way of saying that the prisoner committed a rape?" and Maule J., said: "There does not appear to me to be any ground for the objection. It has already been decided that, in a case of this description, the party may be charged according to the fact, or indicted as principal in the first degree;" referring to the case of *Rex v. Gray and Wise, supra.*

There are no authorities qualifying or casting doubt upon these; and the pleading must be held sufficient. And as we find no other error well assigned, the conviction must be affirmed.

The other Justices concurred.