CORTNEY CROCKETT, plaintiff in error, *vs.* THE STATE OF
GEORGIA, defendant in error.

The circumstances connected with the perpetration of the offense charged,
as testified to by the victim of the rape—the degree of resistance on
her part—the fact that no alarm or outcry was made, the place being
where it could have been easily heard—no marks of violence having
been exhibited, and the injury being concealed for several days after
the opportunity of making complaint, and no proof of any complaint
ever having been made except by the party said to be injured, together
with the fact that no legal step was taken to punish the outrage until
pregnancy was discovered, make this a case where the crime charged
was not sufficiently proven under the law to justify a verdict of guilty.

Criminal law.   Rape.   New trial.   Before Judge HOP-
KINS.   DeKalb Superior Court.   March Term, 1873.

Cortney Crockett was placed on trial for the offense of rape,
alleged to have been committed upon the person of one Ella
Johnson, on December 18th, 1872.   The defendant pleaded
not guilty.

Ella Johnson testified substantially as follows : Witness is
nearly eighteen years old; has never married; about three
or four weeks before Christmas, her mother sent her to de-
fendant's house with a dime, which she was to give to his
wife to get some potash from town for her; she was also up
there getting up wood for washing; witness' house is about
two hundred yards from defendant's.   When defendant's wife
went to town, witness came out of the house and turned to go
home; did not stay there ten minutes after his wife left; when
witness got outside of the fence, on the side of the road, de-
fendant came up to her, caught her by the hand, and put his
arm around her waist; told him to turn her loose; he said he
was going to do it any how, and stooped down; "he just
done what he wanted to do;" he asked witness to "let him.
do it;" told him he should not; tried to push him off but
could not do it; he was too strong for her; he had connection
with her; did not consent to his having intercourse with her;
witness cried and told him to let her loose; it looked like:

the more she talked the worse he got; after he got through he went on up town and she went home and commenced her washing; did not tell her father at once about it, as it was such a "mean act, and she hated to;" he never raped her before or after; it hurt her a little, not very much; it happened about two hundred yards from defendant's house; there was nobody at his house in the morning but his wife and his mother-in-law; they went to town; the occurrence took place about nine o'clock in the morning; the road is not a public road; it is a settlement road, leading to a mill; her father was away working on his house; her mother did not come home until night; did not tell her; it was Wednesday that the defendant had intercourse with her; did not tell any one until the following Sunday, when she informed her sister-in-law, Letty; Letty told witness' father, and then he asked her about it and she told him; that was after January 1st, 1873; the mill to which the road led was running every day; people were constantly passing along it; she did not halloo loud; did not fight him; just tried to push him off; he had her hands pushed back under his arms so she could not get them out; Mrs. White's house is beyond witness' house; she has two boys big enough to plough; does not know if they were at home; they are frequently about there; defendant knew the boys were there; he was not arrested until yesterday; she "let it go along till Court came up;" is now in the family way by the defendant; they had found this out before witness told her father about defendant's conduct; if his wife and mother-in-law had looked round as they went off, they could have seen defendant and witness; she did not tell her father and mother about it sooner, as she hated to let them know what had been done; told her sister-in-law before it was known that she was pregnant; all of this happened in DeKalb county during last December.

Benjamin Johnson testified as follows: I am father of Ella Johnson; I first heard of the rape about two weeks after I moved to the Brown place; my daughter-in-law told me about it; I went to Esquire Tuggle to get him arrested; he

Crockett *vs.* The State of Georgia.

told me to hold on till Court met and see the Solicitor General; I did so, by his advice; I think my daughter is pregnant; Ella has been with me since the surrender all the time; she has been a good, virtuous girl; she did not talk to me about being in the family way in the field at Brown's; I mentioned it to her in my house; it was not mentioned in the field; when it was mentioned in the house, her mother and the children were present; we did not know she was in the family way then; I went to Tuggle's to get a warrant some time after I had moved to the Brown place; moved there since Christmas; I suspected she was in the family way from her actions and not eating, etc.; I kept that to myself; I told wife after daughter-in-law told me; I went to Ella and she said defendant done it; I then went to Tuggle to get a warrant and he would not give me one; I came here on Tuesday and told the Solicitor General about it; I was informed of the rape *two* weeks after it occurred.

The defendant made the following statement: "Well, the way it was done was this. My wife and mother started to town. I staid at the house, after they started off to town. The girl came with fifteen cents for my wife to get potash for her mother, and also tubs to take to the spring. I went and carried the tubs to the spring and went back to the house. When I got back to the house my wife had started and got about one hundred yards from the house. The girl came into the house where I was. I said, 'Ella, don't you want a dram?' She said 'yes,' I said, 'come and get it,' which she did. I then said, 'Ella, won't you give me some?' She said, 'I will if you won't tell anybody.' I said, 'I won't if you won't.' They owed me twenty cents. I went to Atlanta and bought her ten cents worth of snuff and give it to her. That is the truth, just exactly the way it was."

The jury found the defendant guilty. A motion was made for a new trial because the verdict was contrary to the law and the evidence. The motion was overruled and the defendant excepted.

Crockett *vs.* The State of Georgia.

HILL & CANDLER; L. J. WINN, for plaintiff in error.

JOHN T. GLENN, Solicitor General, for the State.

TRIPPE, Judge.

No words more pregnant with judicial wisdom or more appropriately uttered, were ever pronounced by a Judge than those of that great and good man, Lord HALE, when he said, " It must be remembered that rape is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent." He, then, after mentioning two remarkable cases of malicious prosecution for this crime which came within his own knowledge, adds, " I mention these instances that we may be the more cautious upon the trial of offenses of this nature, wherein the Court and jury may, with so much ease, be imposed upon without great care and vigilance, the heniousness of the offense many times transporting the Judge and jury with so much indignation, that they are over-hastily carried to the conviction of the person accused thereof, by the confident testimony, sometimes, of malicious and false witnesses :" 1 Hale, 635, 636.

The following rules and principles are of great worth and significance, and should not be forgotten in the trial of such cases. They are to be found in all the elementary works on criminal law, and if they are thoroughly understood and applied, would go far to protect juries from imposition and innocent parties from being made victims to the revenge of a witness, or to an attempt to protect reputation, lost by consent, under the cry of rape. " Though the party ravished is a competent witness, the credibility of her testimony must be left to the jury, upon the circumstances of fact *which concur with that testimony.* Thus, if she be of good fame—if she presently discovered the offense and made search for the offender— if she showed circumstances and signs of the injury, whereof many are of that nature that women only are proper examiners—if the place where the act was done were remote from

Crockett *vs.* The State of Georgia.

inhabitants or passengers—if the party accused fled for it—these, and the like, are concurring circumstances which give greater probability to her evidence. But if, on the other hand, the witness be of evil fame, and stand unsupported by others—if, without being under control or the influence of fear, she concealed the injury for any considerable time after she had the opportunity of complaining—if the place where the act is alleged to have been committed was near to persons by whom she might probably have been heard, and yet she made no outcry—if she has given wrong descriptions of the place—these and the like circumstances afford a strong, though not conclusive presumption that her testimony is feigned:" 4 Black. Com., 213, 214; 1 East. P. C., 445, 446; 1 Russ. on Crimes, 688, 689, and criminal law *passim.*

Apply these principles to this case and there is not one single particular in which the testimony comes up to them. True, the witness was not proven to be of ill fame, nor did it appear she had given wrong descriptions of the place. But it does appear that the act was done, if not in a public place, near to a neighborhood road—just outside of it—which was continually being traveled; that the wife and mother-in-law of the accused had just walked off—were still in sight—and could have seen them had they "looked round;" that she did not "halloo loud;" that she got up, finished getting wood and went to washing near by defendant's house; did not tell anybody but her sister-in-law, the next Sunday, four days afterwards, and that proven by nobody but herself; that the sister-in-law seems to have been so little impressed by it that she did not tell the father or any one else until after the pregnancy was discovered; that it was the first time she ever had connection with a man; that she was, by this first act, committed by violence and over her resistance, begotten with child, and never said one word about it which was properly proven, until after she was known to be pregnant. This dereliction from the rule quoted is too great on the part of the prosecution to allow the verdict to stand. Had any reasonable explanation been given why such facts were not proven, or why

they did not occur, it would have been entitled to consideration. There is none such in the record.

Judgment reversed and a new trial granted.