[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 376 
It has been held that the two justices of the Sessions are indispensable to constitute a legally organized Court of Sessions, and that neither can be dispensed with, any more than the county judge. (Blend v. The People, 41 N.Y., 604.) The question there arose, however, upon objection and exception taken by the plaintiff in error, and was passed upon as an error, and not as a matter affecting the jurisdiction of the court. The court was held disorganized, by one of the justices of Sessions, who had taken part in the proceedings on the trial for a time, after that, absenting himself *Page 377 
from the place where the court was held, and not reappearing. It is said there, that it was not the case of a member of the court leaving the bench for a few moments, intending to return, but a total abandonment of the trial, in consequence of which one-third of the court was changed. It there appears that another justice of the peace was called by the circuit judge to the vacant place. In the case in hand, the justice of the Sessions who was sworn as a witness did not leave the court room while the trial was progressing; he did not abandon the trial; he left the bench for a space, intending to soon return to it, and did soon return. The mere absence from the bench, while he was in the witness box, did not bring this case within that above cited. If the Niagara County Sessions lost jurisdiction of this case, it was not because any of the members of the court were not present at the trial ready to perform the duty assigned to them by the laws. The court had, in the first instance, obtained jurisdiction and was in the exercise of it. Did it lose it because one of its members was called from his place on the bench to stand for a time in the witness box and give testimony? We are inclined to think that it was error to permit him, to take his place and be sworn and testify, as a witness. It was erroneous, not because in this instance any harm came either to the people or to the defendant, for neither made objection, and both consented; but because such practice, if sanctioned, may lead to unseemly and embarrassing results, to the hindering of justice, and to the scandal of the courts. Thus, it has been sanctioned that two of the members of a court constituted by especial commission, might be sworn and testify as witnesses against one on trial before it. But in that case it would seem that without them there was a court of legal fullness and capacity to conduct the business; for they did not, after being improved as witnesses, return to their seats on the bench. (Rex v. Hacker, Kel., fol. 12, cited in Hawk. P.C., chap. 46, § 17.) It is asserted that in Reg. v. Lee andReg. v. Blunt (1 St. Tr., 1403, 1415), in the year 1600, POPHAM, Ch. J., was both judge and witness; but one would not wish to build on *Page 378 
the precedents alone of those trials in those times. When a nobleman is tried by the House of Lords, any of the peers is a competent witness. (Lord Stafford's Case, 7 How. St. Trials, 1384, 1458, 1552; Earl of Macclesfield Case, 16 id., 1252, 1391.) In those cases, certain lords were not only witnesses, but afterward gave their votes upon the question, guilty or not guilty. But the same reason was there, that without them, peers enough were present to form a court. An additional reason is given also, that they acted in the capacity of jurors as well as of judges; and it is settled, that a juror may be a witness on a trial before himself and his fellows, first being sworn as a witness, besides his oath as a juror. (Rex v. Rosser, 7 C. 
P., 648; Manley v. Shaw, Car. M., 361; Anon., 1 Salk., 405; Bennett v. Hundred of Hartford, Styles, 233; FitzJames v. Moys, Siderfin, 133.) But where the judge, who is called to the witness box, is actually trying the cause, and his continuance in action as judge is necessary to the seemly and proper trial of the cause, then he may not become a witness; it is error so to do, and if objection be made, and exception taken, it is fatal error. In North v. Champernoon (Cases in Ch., pt. 2, p. 78), it was held: If a commissioner in a cause be himself examined as a witness, he must be first examined; and if others be before him examined in his presence, he cannot be afterward examined, having heard the former examinations. A commissioner who had so done, came up afterward and was examined in court; but his deposition was suppressed on motion. In Ross v. Buhler (2 Martin [N.S.] [La.], 312), it was held, that one cannot be examined as a witness at a trial where he sits as judge. One of the reasons there given does not apply to the case in hand. It was asked there, who is to administer the oath? But that was done in the court below, in the case in hand, by the clerk. It is though, as applicable in this case as that, the consideration that the judge is to determine on his own competency, and whether to give a nonsuit in a civil case, or to instruct the jury to acquit in a criminal one. (The People v. Bennett,49 N.Y., 137.) Other considerations may be added. If a *Page 379 
judge is put upon the stand as a witness, he has all the rights of a witness, and he is subject to all the duties and liabilities of a witness. It may chance, that he may for reasons sufficient for himself, but not sufficient for another of equal authority in the court, decline to answer a question put to him, or in some other way bring himself in conflict with the court. Who shall decide what course shall be taken with him? Shall he return to the bench and take part in disposing of the interlocutory question thus arising, and upon the decision being made, go back to the stand, or go into custody for contempt? The first would be unseemly, if not unlawful, for it would be passing judicially upon his own case. The last would disorganize the court and suspends its proceedings. Other like results may be conceived as possible, equally as contrary to the good conduct of judicial proceedings. (Reg. v. Gazard, 8 C. P., 595; see an interesting foot note, 1 Campbell's Lives Ch. Jus., 166.) Therefore the inclination of the courts has been to hold, that when it is necessary for the conduct of the trial that one should act as judge, he may not be called from the bench to be examined as a witness; but when his action as a judge is not required, because there is a sufficient court without him, he may become a witness, though it is then decent that he do not return to the bench. (See, also, People v. Miller, 2 Park. Cr., 197;Morss v. Morss, 11 Barb., 510.) In the case here, the Justice of the Sessions who was examined as a witness was a necessary part of the court, without whose continued presence and assisting action it would have been broken up, as we have seen from Blend
v. People (supra). It was erroneous for him to become a witness in the case. The error is not available here, because he was examined by the consent of the People and the prisoner. But the fact is not relied upon as error. A more fundamental position is taken. It is insisted that the court became no court, and the county judge and the other justices of the Sessions lost jurisdiction of the case. We are not of that mind. All the constituents of the Court of Sessions were together in one place. All and each were ready and *Page 380 
able to perform each and every duty incumbent upon them. That one of the members of the court was not in the place in the room customary for one to occupy holding his office, did not disorganize and disrupt the court. If so, a temporary absence from the bench for any purpose would work the same result.Blend v. People (supra) pronounces against such effect.
We have seen that a juror may be sworn and give his testimony to the court and to his fellows without breaking up the panel, yet he for the moment may be out of the jury box and performing a double duty, rendering his testimony as a witness, and noting its effect in aiding or abating the force of that which had gone before it. The attitude of a judge standing as a witness is not different in result upon his judicial function. He still retains it and is still in the exercise of it, still has his jurisdiction of the case before him, together with his fellows on the bench. All of the component parts of the court are present together and co-operating, all the requisites of jurisdiction still exist as lively as when the trial began. There was no physical impossibility, as there was in Blend v. The People (supra), in Justice BAKER at any moment on the arising of a question asking a decision from the bench, joining with the other members of the court in arriving at and pronouncing it. Cancemi's Case
(18 N.Y., 128), and others (The People v. Campbell, 4 Park., 386; Grant v. The People, id., 527) are cited. They are not applicable. In the first, confessedly, there was not present for a part of the trial, nor on the rendition of the verdict, a full and constitutional panel of jurors. One had been withdrawn from the panel and had been dismissed from the case, and but eleven remained doing the duty which by law could be done only by twelve. It was held that consent in a criminal case would not give jurisdiction to a tribunal not known to the law. ThePeople v. Campbell, is like it. It holds that where a court is without jurisdiction, consent cannot give it in a criminal case.Grant v. The People, holds that an issue upon a special plea to an indictment can only be tried by a jury, and consent cannot give jurisdiction to the court to try it without a jury. But *Page 381 
here, as we have shown, the tribunal created by the law, had regularly acquired jurisdiction of the case, and remaining in due and orderly session, retained it to the end, without aid from the consent of the parties, or either of them.
We do not consider whether this question comes properly before us on the papers, preferring to dispose of it as if it did.
The prisoner's counsel took several exceptions on the trial to the rulings of the court on the admission and rejection of testimony. He also took an exception to the refusal of the court to direct a verdict, on the ground that there was no legal evidence of the crime having been committed. It is not necessary to determine whether these exceptions were well taken. There is another exception in the case, which requires an affirmance of the judgment of the General Term. The same question on the admissibility of evidence may not arise again, and we cannot add any thing to what was said by CHURCH, Ch. J., in The People v.Bennet (supra), upon the power and the duty of the court to advise the jury to give a verdict of acquittal, when the evidence is too slight to warrant a conviction.
The counsel for the prisoner, asked the court to charge the jury, that they must be satisfied from the evidence, before finding the prisoner guilty, that the prosecutrix resisted him to the extent of her ability, on the occasion. The court declined to charge the jury in those words, but did charge that the act must have been done by force, and against the will and resistance of the prosecutrix, without saying how forcible and continued, or how feeble and yielding that resistance might be. The counsel excepted to the refusal to charge and to the charge as made. There is no error in the charge as made. The prisoner was indicted under the statute declaring it a felony to forcibly ravish any woman of the age of ten years or upwards. (2 R.S., 663, § 22, sub. 2.) The charge, as made, did in general terms express the facts which make the crime. The act to be a crime (so far at least as this case is concerned), must be done by force, and against the will and resistance of the woman *Page 382 
Coupled with the refusal to charge as requested, it failed, however, to express all that it was necessary for the jury to find. The resistance must be up to the point of being overpowered by actual force, or of inability from loss of strength longer to resist, or from the number of persons attacking resistance must be dangerous or absolutely useless, or there must be duress or fear of death. (Reg. v. Hallett, 9 C. P., 748; 1 Hawk. P.C., chap. 41, § 2.) In the case here, there is no evidence of inability from loss of strength longer to resist; there was but one for the prosecutrix to oppose, and he a man in years; there was no duress nor reason to fear death; there were no threats, instead thereof there were promises and words of palliation and persuasion; there was nothing to show that resistance was absolutely useless; she had possession of her faculties of mind and body, and retained her consciousness; she was then capable of resistance up to the point of being overpowered by actual force. In Reg. v. Hallett, the jury was instructed that if they thought from all the circumstances, that although when the prosecutrix was first laid hold of, it was against her will, yet she did not resist afterward, because she in some degree consented to what was afterward done to her, they ought to acquit of the charge of rape; and they were also told that they would have to consider whether the female made every resistance that she could. The text-books speak thus: "It must appear that the offence was committed without the consent of the woman, but it is no excuse that she yielded at last to the violence, if her consent was forced from her by fear of death, or by duress." (Roscoe's Cr. Ev. [6th Lond. and 6th Am. ed.], 806; 1 East P.C., 444, § 7, and citations.) It is an extreme which they put, that shall be no excuse. So in Viner it is laid down, that a woman cannot be ravished by one man without some extraordinary circumstances of force. (18 Viner Ab., 155, Rape, pl. 11.) InThe People v. Abbot (19 Wend., 192), COWEN, J., says: "Any fact tending to the inference that there was not the utmost reluctance and the utmost resistance, is always received." Why *Page 383 
if the jury are not to inquire whether there were the utmost reluctance and the utmost resistance? This saying has been cited with approval in more than one instance. (The People v.Morrison, 1 Park. Cr., 625; The People v. Quin, 50 Barb., 128; Reynolds v. The People, 41 How. Pr., 179.)
The request to charge is not beyond the limit of the rule. Certainly, if a female, apprehending the purpose of a man to be that of having carnal knowledge of her person, and remaining conscious, does not use all her own powers of resistance and defence, and all her powers of calling others to her aid, and does yield before being overcome by greater force, or by fear, or being surrounded by hostile numbers, a jury may infer that, at some time in the course of the act, it was not against her will. Of course, the phrase, "the utmost resistance," is a relative one; and the resistance may be more violent and prolonged by one woman than another, or in one set of attending physical circumstances than in another. In one case a woman may be surprised at the onset, and her mouth stopped so that she cannot cry out, or her arms pinioned so that she cannot use them, or her body so pressed about and upon that she cannot struggle. But whatever the circumstances may be, there must be the greatest effort of which she is capable therein, to foil the pursuer and preserve the sanctity of her person. This is the extent of her ability. (And see The People v. Bransby, 32 N.Y., 525, 531,540; The People v. Hulse, 3 Hill, 309, 316, 317; Rex v.Lloyd, 7 Carr. P., 318; Crosswell v. The People,13 Mich., 427, 433.)
The request to charge in this case differs from that in ThePeople v. Monnais (17 Abb. Pr., 345), if that case be conceded to be correctly decided, as to which we need not now express an opinion. There the request was, "that the jury cannot convict, unless they are satisfied from the evidence that utmost reluctance was used." It is the abstract proposition which is presented there, and might be understood to be the utmost reluctance capable on the part of any *Page 384 
one in peril of violation. In this case, it is the extent of the ability of this prosecutrix at that time. To quote exactly the language of the request, that she "resisted the defendant to the extent of her ability, on the occasion it is alleged the defendant committed the offence charged against him." The words "her ability," and "on the occasion," make measurement of the ability to the extent of which she must be found to have gone. It was the extent of her ability, and not only that, but the extent of her ability on that occasion, that is, amid the circumstances in which she then was placed, to which the request to charge asked that the attention of the jury be directed. Is it not the law of this crime, in this State, that the woman must have resisted to the extent of her ability on the occasion on which she alleges that this grievous wrong was done her? Is not the law of her conduct in the transaction included in the form of words which the counsel for the prisoner offered to the court? Would it have been error to have so instructed the jury? To our thinking, these first two queries can have but one answer, in the affirmative; and that given, the last query must be replied to in the negative. Can the mind conceive of a woman, in the possession of her faculties and powers, revoltingly unwilling that this deed should be done upon her, who would not resist so hard and so long as she was able? And if a woman, aware that it will be done unless she does resist, does not resist to the extent of her ability on the occasion, must it not be that she is not entirely reluctant? If consent, though not express, enters into her conduct, there is no rape. The yielding to overpowering force is submission, but not consent; if the force be short of that, there may be consent, or the act may not be against her will. We are aware that the view which some other courts have taken of this question does not seem to agree herewith. We have already namedThe People v. Monnais (supra), which, however, is somewhat distinguishable from our case. The learned Supreme Court of Massachusetts, in The Commonwealth v. McDonald
(110 Mass., 405), approved of an instruction to a jury, "that there was no rule *Page 385 
of law requiring a jury to be satisfied that the woman, according to their measure of her strength, used all the physical force in opposition, of which she was capable." The case is meagerly reported. There is no discussion of the question, and Regina v.Camplin (1 Cox C.C., 220; see S.C., 1 Car. K., 746) is cited as an authority. What that case was is best shown by two remarks of PATTERSON, J., in pronouncing sentence upon the prisoner: "The prosecutrix showed by her words and conduct, up to the last moment at which she had sense or power to express her will, that it was against her will that intercourse should take place. And it was by your illegal act alone, that of administering liquor to her, to excite her to consent to your unlawful desires, that she was deprived of the power of continuing to express such want of consent. Your case, therefore, falls within the description of those in which force and violence constitute the crime, but in which fraud is held to supply the want of both." And it must have been in reference to the circumstances thus spoken of that Lord DENMAN, C.J., said, during the argument: "It is put as if resistance was essential to a rape; but that is not so, although proof of resistance may be strong evidence in the case." In Massachusetts, before McDonald's Case (supra), it was declared the law, that carnal intercourse with a woman, who from insensibility was incapable of consenting, was rape. (Com. v.Burke, 105 Mass., 376.) And if McDonald's Case (supra) was in its facts like the case there cited of Reg. v. Camplin, it was but a reiteration. These cases, however, are not precisely applicable to that in hand. In this State our statutes make a distinction, between a rape, and the act of carnal intercourse without her consent with a woman made insensible by the administration of that which produces stupor; and the latter is an offence against the person, but not rape. (2 R.S., 663, § 23;The People v. Quinn, supra.) It is yet to be seen, so far as we have discovered, what our court of last resort would hold, where the act was effected by stratagem or fraud, or by insensibility brought about by any other means than those *Page 386 
specified in the twenty-third section. (Supra. See, however, 1 Wheeler's Cr. Cases, 378, 381, n.; People v. Bartow.) The revisers say that the offence, under such circumstances, probably would not be rape. (5 Edmonds' Stat., 542.) In Iowa, it is held in one case, that it is not necessary to establish the non-consent or force by the outcry of the female, nor to show the fact of an actual struggle. It is to be observed of that case, that the imbecility of mind of the female was shown, and that some force was used by the accused; and the case turned, I think, upon the lack of intelligence in the victim to give or withhold consent, or to prompt a vigorous resistance. (State v. Tarr,28 Iowa 397.) No such case is before us.
It is our judgment however, as by the law of this State, there can be the crime of rape of a female over ten years of age, only where the act is against her will, that if she is conscious of what is attempted, and has the possession of natural mental and physical powers in usual degree, is not overawed by the number of assailants, nor terrified by threats of death or the like; nor in such place and position as that resistance is less; she must resist until exhausted or overpowered, for a jury to find that it is against her will.
In this case the prosecutrix may or may not have done all that she could do. But it was for the jury, before they convicted, to be satisfied that she had.
For this reason the order of the General Term should be affirmed.
All concur.
Order affirmed. *Page 387