GENERAL HOLLIS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

Where in a case of rape no resistance by the prosecutrix is shown, and her fear of loss of life or great bodily harm is relied upon to supply the place of such resistance, as evidence of want of consent on her part, and her age is such that it is to be presumed that she was of an intelligent or understanding mind on the subject, and there is an entire absence of evidence to the contrary of such presumption, a new trial should be granted if the testimony is not such as to justify the jury in believing beyond a reasonable doubt that it was on account of such fear that she made no resistance.

Writ of Error to the Circuit Court for Clay county.

STATEMENT.

The plaintiff in error was indicted at the last Fall term of Clay county Circuit Court for having committed a rape upon Luvinia Turnage, on the ninth

day of the previous April, and having been found guilty by the jury, was sentenced by the court to be hung.

The testimony shown by the bill of exceptions is as follows: Luvinia Turnage testified: My name is Luvinia Turnage; I am fourteen years of age, and live at Green Cove Springs, Clay county, Florida; I live with my father and mother; our house is in an orange grove; the trees are pretty thick, and grow all around the house. I know the defendant at the bar; he came to our house one day last April, and asked me for a cool drink of water; I showed him the well, and told him to get it; then he asked me if he could go through our house to Sallie Hooper's. He came in the house and caught me, and put one arm around my waist, and one hand over my mouth, and threw me down; he then slipped his hand down so that his arm would press on my throat, and told me if I hallooed he would kill me; then he pulled up my dress and put his thing in me, and penetrated me. When he got up he said, "there now, I have broken the law." Then he went off. My mother was cooking for Mrs. Moore, and my father was working at the wharf. I went to Mrs. Moore's and told my mother what had happened. There was a little blood on my underclothing in front, and I was sore for several days afterwards. Cross examination.—There are several families living near our house just across the court; I can see these houses from my house, and can see the people passing about their places. I had never had my sickness when the

defendant assaulted me, but had the whites. Witness said she did not know what "penetration" meant.

Mrs. Turnage testified that she was the mother of Luvinia, and was not at home when defendant assaulted her daughter; was cooking for Mrs. Moore; that about two or three o'clock in the afternoon Luvinia went and told her "what had happened;" that witness did not have any doctor to examine her daughter; saw a little blood on her underclothing. Cross examination.—Her daughter had never had her sickness at the time she was assaulted; she had whites and had her sickness three or four weeks afterwards. Since she was assaulted, witness has frequently seen her underclothing mattered up.

Mr. Turnage testified that he was the father of Luvinia, and that as he came from work he passed Mrs. Moore's, and his wife told him "what had happened;" and that Luvinia afterwards told him "about it."

Andrew Fells, a witness for defendant testified that he is a policeman of Green Cove Springs; knows the reputation of Luvinia Turnage in the community where she resides, for truth and veracity, and that her reputation is bad, and witness would not believe her under oath.

Sallie Hooper testified for defendant as follows: I live just across the street from Luvinia Turnage. There are some orange trees around her house, but I can see plainly all about her house. I saw the defendant there the day she says he assaulted her; saw him at the well, and saw Luvinia standing on the front

porch of her house. When he got the water he came over to my house. I did not hear Luvinia make any outcry, and did not hear a disturbance of any kind at her house. I know the reputation of Luvinia in the community where she lives, for truth and veracity; her reputation is bad; I would not believe her under oath.

J. A. Peeler; in rebuttal, testified that he knew the reputation of Sallie Hooper in the community where she lives, and that her reputation was bad.

George N. Barton testified in behalf of the State, that he was familiar with the place and surroundings where Luvinia Turnage resides; she lives in an orange grove; the trees are pretty thick; the house sits back some distance from the street. Several families live in the immediate vicinity where Luvinia lives; that by stooping down and looking under the tops of the trees, he could see all about the place.

J. S. Barrs testified for the State, that he arrested the defendant, who, when arrested, said he "had been to Luvinia's house to get some water, but did not assault her."

*The Attorney-General* for Defendant in Error.

RANEY, C. J.:

This case, one of rape, comes before us on a motion for a new trial, the grounds of which, insisted upon here, are that the verdict was contrary to law, and

contrary to the evidence. The instructions given by the judge to the jury were not excepted to.

It is contended on behalf of plaintiff in error that the testimony does not show that the connection was consummated by force *and* against the will of the prosecutrix. The statute contemplates that the offence shall be "by force and against her will." Sec. 36, p. 355 McClellan's Digest; 2 Bish. Crim. Law, sec. 1113; Charles vs. State 6 English (11 Ark.), 389; State vs. Murphy, 6 Ala., 765. There must be a concurrence of these two ingredients. Cato vs. State, 9 Fla., 163, 184. If force was used and yet the carnal knowledge was not against the will of the female, the crime of rape has not been committed. In some states it has been held that there must be resistance to the extent of the woman's ability. Thus in New York, in People vs. Dohring, 59 N. Y., 374, where the female was but fourteen years old, the decision is, that to constitute the crime of rape of a female over ten years of age, when it appears that at the time of the alleged offence she was conscious, had the possession of her natural mental and physical powers, was not overcome by numbers, or terrified by threats, or in such place and position that resistance would have been useless; it must also be made to appear that she did resist to the extent of her ability at the time and under the circumstances. See also People vs. Morrison, 1 Parker's Crim. R., 625; People vs. Quinn, 50 Barbour, 128. In other states it is said that there must be the utmost reluctance and the utmost resist-

ance upon the part of the female, or her will must be overcome by fear of the defendant; Strang vs. People, 24 Mich., 1; Don Moran vs. People, 25 Ibid, 356; and that "the passive policy," or a half way case will not do, or resistance of such an equivocal character as to suggest actual consent, or not a very decided opposition. State vs. Burgdorf, 53 Mo., 65; People vs. Brown, 47 Cal., 447; People vs. Hulse, 3 Hill, 309, 315-17. If the jury entertain a reasonable doubt of such reluctance and resistance, they should acquit; Strang vs. People, *supra*; and where upon a trial the vital issue was whether the act was committed by force and against the will of the prosecutrix, the jury must be satisfied beyond a reasonable doubt that she did not yield her consent during any part of the act. Brown vs. People, 36 Mich., 203.

In Commonwealth vs. McDonald, 110 Mass., 405, the trial judge charged that the act of the defendant must have been without the woman's consent, and there must have been sufficient force used to accomplish his purpose; that the jury must be satisfied that there was no consent during and part of the act, and that the degree of resistance was frequently an essential matter for them to consider in determining whether the alleged want of consent was honest and real; but that there was no rule of law requiring a jury to be satisfied that the woman, according to their measure of her strength, used all the physical force in opposition of which she was capable; and this charge was held by the Supreme Court to be appropriate and

correct.    Likewise in State vs. Shields, 45 Conn., 256, the Supreme Court of Connecticut approved a charge that there was no rule of law that there could be no rape unless the woman manifested the utmost reluctance and made the utmost resistance, but. that the jury must be satisfied that there was no consent during any part of the act, and that the degree of resistance was an essential matter for them to consider in determining whether there was an honest and real want of consent.    In this case it is said in the opinion: The importance of resistance is simply to show two elements in the crime, carnal knowledge by force by one of the parties, and non-consent thereto by the other.    These are essential elements, and the jury must be fully satisfied of their existence in every case by the resistance of the complainant if she had . the use of her faculties and physical powes at the time, and was not prevented by terror or the exhibition of brutal force.    So far, resistance by the complainant is important and unnecessary, but to make the crime hinge on the uttermost exertion the woman was physically capable of making, would be a reproach to the law as well as to common sense.

Mr. Bishop in his work on Criminal Law, Vol. 2, sec. 1122, says it is plain that in the ordinary case where the woman is awake, of mature years, of sound mind and not in fear, a failure to oppose the carnal act is consent, and though she objects verbally, if she makes no outcry and no resistance, she by her conduct consents, and the carnal act is not rape in the

man; that the will of the woman must oppose the act, and that any intimation favoring it is fatal to the prosecution. He, however, disapproves the doctrine as to resistance affirmed in People vs. Dohring, *supra*, and says that the *text of the law*, and the better judicial doctrine require only that the case shall be one in which the woman did not consent; her resistance, however, must not be a mere pretense, but in good faith. The *text of the law* referred to by him is the statute of Westm. 2, (13 Ed. 1), c. 34, A. D., 1285, which he gives, sec. 1111 Ibid, as follows: If a man from henceforth do ravish a woman married, maid, or other, where she did not consent, neither before nor after, he shall have judgment of life and of member. And likewise where a man ravisheth a woman married, lady, damsel, or other, with force, although she consent after, he shall have such judgment as before is said, (that is, of life and member) if he be attainted at the king's suit, and there the king shall have the suit.

It is not necessary now for us to elect between these two views, yet where the prosecutrix is of mature years and in possession of her faculties, we are inclined to think there is very much in the former of them to commend it.

The question here is whether or not the evidence can be said to be sufficient to show to the minds of any fair jury beyond a reasonable doubt that the act was done by force and against the will of the prosecutrix. The alleged offence is shown to have been committed in the

day time, in a village, in a house "near" to which sev-
eral families live "just across the street," the people
of which families the prosecutrix says she could see
passing about their places.    There is no evidence what-
ever of resistance, no attempt to prevent his throwing
her down, no use of her arms, legs or body against his
efforts to throw her down.    There was no struggle
either before or after she was down ; no clothing is
shown to have been torn ; no bruise of any part of her
person ; nothing on this line is stated as the result of
the connection which might not have occurred if it had
been with her fullest consent.    Granting that his put-
ting his hand over her mouth at the time that he put
his arm around her waist, sufficiently accounts for the
absence of outcry prior to her being put down, it does
not do so as to want of resistance.    There is moreover
no showing, whatever might be its effect, that the tak-
ing hold of her was in such rough or brutal manner as
to put a woman of mature years and intelligence in fear
of loss of life or other great danger, and thereby sup-
press or deter resistance on her part, or that she was
actually in such fear.    All that we have proven up to
the point of her being thrown down is that it was done
in the manner stated, but without any opposition or
resistance on her part.    When she has been put down
we find that he threatened he would kill her if she hal-
looed.    True it is that the threat is evidence tending
to prove his purpose to consummate the carnal knowl-
edge against her will, but it is not of itself evidence
that she was making any resistance of any kind to his

efforts. Up to this time she had made none, and she is not shown to have made any afterwards. Pressing his arm upon her throat, as he did when he removed his hand from her mouth, which he must have done to so locate his arm, an act which the jury justly may have inferred, was done to prevent her making an outcry, still there was no resistance with her body or any member of it. No adjudication, or other authority, nor common sense applied to the nature of a virtuous woman, authorize us to hold that this testimony could support a verdict under either of the two views mentioned by the authorities as to the extent to which there must be resistance where the prosecutrix was of mature years. It cannot be assumed of any mature woman that her submission to carnal connection under such circumstances is against her will, in the absence of affirmative proof of such a mental or physical condition as would naturally and reasonably overcome her powers of resistance ; on the contrary, the only natural and reasonable conclusion in such a case would be that it was really, if not seemingly, with her consent. Though this be so, is it, in view of the authorities, the law that, considering the age of this prosecutrix, the testimony was sufficient to justify the jury in believing beyond a reasonable doubt that the consummation was against her will.

If the girl is very young, says Mr. Bishop (sec. 1124), and of mind not enlightened on the question, this con-

sideration will lead the court and jury to demand less clear opposition than in the case of an older and intelligent female, or even lead them to convict where there is no apparent opposition.  Analyzing this paragraph closely we perceive that an essential element of it is that the mind of the prosecutrix is not enlightened on the question.  That it is not, may appear from the age of the girl when she is "very" young, but the paragraph does not inform us what age is to be regarded as "very young."  The statute, sec. 36, p. 355, McClellan's Digest, under the first clause of which this indictment was found, (the subsequent clause not making the element of want of consent a feature of the offence it creates and punishes,) provides that whoever ravishes and carnally knows a female of the age of ten years or more by force and against her will, or unlawfully or carnally knows and abuses a female child under the age of ten years, shall be punished by death or by imprisonment in the State penitentiary for life."  "Some age," it is said in O'Meara vs. State, 17 Ohio State, 515, 518, "below which no child will be deemed capable of giving that intelligent consent which would in the eyes of just people be any excuse, or even mitigation of an act of carnal knowledge beyond what would exist were it actually against the will of the child. Ten years is perhaps as safe as any age that can be fixed upon.  The strict rule will hardly ever be actually resorted to in practice, because in almost all cases

there will be some evidence pro or con to show the actual degree of intelligence of the child ; and in all cases it will be a question of fact for the jury whether the child did in fact understand the nature of the act. Of course the presumption, meaning that of incapacity to consent to the act of carnal knowledge, or to any assault with intent to commit such act, "grows weaker and weaker as the child approximates the age of ten, amounting to little more than a nominal presumption during the latter part of the period." Disapproving to some extent of a charge given by the lower court, it is further said, p. 519 : "We would prefer to put the rule in words less broad and comprehensive, and less metaphysical, merely leaving it to the jury to say whether the female in fact understood the nature of the act, whether she had such knowledge on the subject as females at the age of ten usually have."

Though unquestionably a rape can be committed upon a female under ten years of age, still the presumption where she is ten years of years or more, must, under a law like the first clause of our statute, be that her mind is "enlightened on the queetion." Where the female is fourteen years of age, the presumption is that she is so enlightened. That this presumption may be overcome by evidence, we do not doubt, but there is no evidence to impair or overcome it in the case of this prosecutrix, and hence the jury would not have been justified in attributing the absence of resistance on her

part to want of intelligence on the question. They were bound to presume that she understood and appreciated the act the defendant was seeking to consummate. This being so, the question is were the circumstances such, considering her age, as justified the jury in believing beyond a reasonable doubt, that the act was done against her will, or that she did not consent. We fail to find a single case in which a conviction for rape upon a person of about this age has, under such weak testimony, been sustained upon the idea of submission by the prosecutrix under fear. In Stephen vs. State, 11 Ga., 225, where the verdict was guilty of an attempt to commit rape, there was proof both that the female objected and struggled, and of marks of great violence and abuse upon her person, and of large holes in her clothes, and that she was sickly and weakly and poorly grown, and nothing but a child, and had never had her courses, and had no appearance of womanhood, and shown to be a weak minded creature. Her exact age does not appear, yet she was evidently over ten years old. In State vs. Cross, 12 Iowa, 66, the prosecutrix was fifteen years of age, and the prisoner forcibly pushed her into a bed room and fastened the door, and then passed to the front entrance to see if anyone was coming, during which time she tried to escape from the window and to open the door; when he returned and threw her upon the bed, and against her will, accomplished his purpose. He was convicted of an assault with intent

to commit the principal crime, and the court said it could not hold that the jury was not justified in convicting of the assault, yet if the conviction had been of the higher offence it might have been inclined to the opinion that the testimony was not sufficient. In Dawson vs. State, 29 Ark., 116, the child was about eleven years old, and was in defendant's room about sunrise sweeping, and he ordered her into his bed, and upon her not complying he threatened to stamp her into the ground. He then seized hold of her and jerked her into it, and, against her will, she crying and screaming the while, violated her person. Profuse bleeding followed, and she was found bruised and lacerated in a horrible manner. No sign of puberty or womanhood could be discovered in her. The conviction of rape was affirmed.

In Regina vs. Day, 9 Car. & P., 722, a trial on the circuit before Justice Coleridge, the indictment was for attempting to carnally know and abuse a girl under ten years of age, and for a common assault. The prosecutrix testified she was ten years old on a specified day in January, 1841, and her father, that he could not precisely state the time of her birth, he not being at home when she was born, and the mother being sick at the trial could not testify. This evidence of age being held insufficient, the cause proceeded on the charge of a common assault. The prosecutrix also deposed that she was coming up a certain street about seven o'clock when she met the prisoner, who accompanied her up a dark lane, which was on her road home,

General Hollis v. The State of Florida.—Opinion of Court.

and there he made an assault of her, which was without any violence on his part, or actual resistance on hers, and that on the same evening she told her mother what had happened.    The Judge directed the jury that they should say whether the submission of the prosecutrix was voluntary on her part, or the result of fear under the circumstances in which she was placed, and if of the latter opinion, to find a verdict of guilty of a common assault, which was done.

In each of these cases, where the above doctrine has been invoked, except that of Regina vs. Day, the circumstances were either much more calculated to put her in fear, or there was clear proof of resistance, or there was evidence that showed the prosecutrix was actually in fear.    In the case of Regina vs. Hallett, 9 Car., & P. 748, the prosecutrix does not appear to have been under mature years.    There the offence was committed by eight men, they having followed her from a public house to the door of her lodging, a brothel, whose door was fastened on the inside, they holding her with her back against the door, and the Judge giving, among other charges, the following : If there was non-resistance on her part, but it proceeded merely from her being overpowered by actual force, or from her not being able from want of strength to resist any longer, or that from the number of persons she considered resistance dangerous, and absolutely useless, the full charge was made out ; but if you think under all

the circumstances that the prosecutrix, although at first objecting, consented to all that was done, you should convict them of an assault. The verdict was guilty of *an assault*. Here there was the presence of an overpowering force ; and in Strang v. People, 24 Mich., 1, where the prosecutrix was sixteen years old, there was express proof of her being in a state of fear, and had in fact yielded in consequence thereof.

Considering the time and other circumstances under which the offending is shown to have occurred, that there is no room for a contention that resistance or outcry would have been useless, the presumption from her age that she was of an intelligent or understanding mind on the subject, within the entire absence of evidence to the contrary, the failure to prove that there was actual fear, and the absence of any resistance, to say nothing of the impeachment of the reputation of the prosecutrix for truth and veracity by witnesses whose reputation on this score stands unimpeached, and of the indefinitensss of the testimony on other points, we think the testimony is insufficient to sustain the verdict, and that the case should go back for a new trial, upon which the facts can be more fully inquired into. Where fear is relied upon to account for or supply the place of actual resistance, the testimony should show such circumstances as clearly justify the conclusion that it existed. None of the cases cited above, if we consider their circumstances, justify a conviction of

*rape* in the case before us ; that of Regina *vs.* Day, besides being nothing more than a trial on the Circuit, was as it finally went to the jury for decision, a trial for a common assault, and is itself an extreme case, although the girl was of very tender years. The circumstances here fall considerably short of any we have found where a conviction of the principal offence has been sustained. Jenkins *vs.* State, 1 Tex. Ct. of App., 346 ; Crockett *vs.* State, 49 Ga., 185 ; State *vs.* Hagerman, 47 Iowa, 151 ; Brown *vs.* People, *supra.*

The judgment is reversed and a new trial granted.