# The People v. Timothy Lynch.

*Examinations preliminary to the issue of warrants.* The object of the oral examination of the complainant and such witnesses as he may produce, required by the statute (*Comp. L.* § 7844) before issuing a warrant, is to enable the justice to determine from it whether there is sufficient ground for issuing a warrant to require the accused to submit to an examination; and certainly no stronger evidence could be required for issuing the warrant for arrest, than would be for holding the accused for trial after the arrest.

*Complaint: Preliminary examination of complainant.* Whether where the complaint for arrest is in due form and sufficient on its face to give jurisdiction, it is competent to go behind it to show that no oral examination was had upon oath of the complainant before issuing the warrant:—*Quære?*

*Jurisdiction to issue warrants.* But where a complaint for assault with intent to ravish, etc., is thus regular on its face, a showing merely that the warrant was issued upon such complaint and an oral examination of the complainant alone, and that he testified only from knowledge and information derived from his daughter, the victim of the alleged offense, is not sufficient to show that the justice acted without jurisdiction in issuing his warrant.

*Evidence: Complaints: Res gestæ.* Complaints and statements made to her father by the victim of such an offense immediately after the injury and in reference to it, as well as her appearance at the time, would be admissible evidence for the prosecution even upon a trial, and such evidence, together with other surrounding circumstances, might, in some cases at least, be sufficient to justify the issuing of a warrant without waiting to take the testimony of the daughter herself.

*Warrant: Jurisdiction: Justice of the peace: Weight of evidence.* Where there is admissible evidence tending to show the probable guilt of the accused, the jurisdiction of the justice to issue a warrant of arrest will not be reviewed upon the weight of the evidence; that is a question for the justice alone, and if it satisfies him and he issues the warrant his decision is conclusive.

*Warrant: Arrest.* Whether the issuing of a warrant and the arrest of the accused upon it are in all cases a necessary pre-requisite to a valid examination upon the charge of an offense not cognizable for trial by a justice of the peace; or whether it answers any other purpose than that of enforcing attendance of the prisoner and preventing his escape:—*Quære?*

*Complaint: Arrest.* A complaint, however, is a necessary pre-requisite.

*Arrest: Warrant.* And in cases of offenses triable before a justice a warrant is necessary under our statute (*Comp. L.* § 5529), providing that the accused is to be tried for the "charge stated in the warrant."

*Assault with intent to ravish, etc.: Felony.* The offense charged in this case, which was an assault with an intent to commit a rape, is a felony, and not triable by a justice of the peace.

*Charge to the jury: Resistance: Presumptions.* The charge to the jury in this case, in reference to the age, physical development and knowledge of the victim of the alleged offense, and the bearing of these facts upon the question of her resistance, is held not to have been prejudicial to the defendant. There is no conclusive presumption as one of law, that a girl nearly fourteen years old would understand the nature and consequences of the act in question; and

upon the question of resistance, and the extent of the effort to resist, it is proper for the jury to consider the age, strength and capacity, mental and physical, of the person, as these facts appear in the evidence.

*Submitted on briefs April 22. Decided May 6.*

Exceptions from Bay Circuit.

*T. F. Shepard*, prosecuting attorney of Bay county, for the People.

*Hatch & Cooley*, for respondent.

CHRISTIANCY, J.

The defendant was tried in the circuit court for Bay county upon an information charging him with having, on the 7th May, 1873, at Bay City, in said county, with force and arms, "in and upon one Mary Carney, a female child of the age of ten years and upwards, to-wit: of the age of fourteen years," feloniously made an assault, "with intent, her, the said Mary Carney, by force, and against her will, feloniously to ravish and carnally know, contrary to the statute," etc.

Upon being called upon to plead to the information the defendant first put in a plea in abatement, setting forth, substantially, that the complaint on which he was arrested and examined before the justice of the peace, for the offense charged, was sworn to only by Michael Carney, the father of the girl, who had no personal knowledge of the facts, but swore to the matters stated in the complaint only upon the information he had received from his daughter, upon whom the offense was charged to have been committed, and that no other evidence had been taken by, or submitted to the justice; that consequently the justice had acquired no jurisdiction to issue the warrant upon which defendant was arrested and brought before the justice for examination;

---

*Isaac Marston, Attorney General, having been, prior to his appointment to that office, of counsel for the defendant, the prosecuting attorney who had tried the cause at the circuit, argued the exceptions in this court.

that on the examination complainant testified that when he made the complaint before the justice he had no personal knowledge of the facts, but that he had made it from the information received from said daughter; that, therefore, the justice not having acquired jurisdiction, the examination before him was all void and of no effect, and therefore the defendant had never had the examination to which, by the statute, he was entitled before the information could be filed against him. The plea further states that, upon being brought before the justice upon the warrant, he offered to plead not guilty to the offense charged in the complaint, and demanded a trial by jury, which was refused by the justice. And further, that the evidence on the examination before the justice, when defendant was brought in upon the warrant, did not tend to prove an offense not cognizable by a justice of the peace [by which he must mean that it did not tend to prove the intent charged].

To this plea the prosecuting attorney demurred, and upon argument the demurrer was sustained; and thereupon, by the permission of the court, the defendant moved to quash the information, upon substantially the same grounds as those set up in the plea, viz: that the complainant, when he swore to the complaint, had no personal knowledge of the facts, etc., that therefore the justice acquired no jurisdiction to issue the warrant, or to hold the examination which had been had before him upon the complaint, and consequently that the defendant never had had the examination for the offense to which he was entitled before he could be called upon to answer to an information; and, further, that the offense charged in the information was one cognizable before a justice.

This motion was based upon an affidavit of the defendant, an affidavit of the justice before whom the complaint was made and the examination had, and upon a copy of the complaint. The only material matter in the affidavit of the defendant is, that complainant, when he made the complaint, had no personal knowledge of the facts, and that

no other evidence was given before the justice, prior to the issuing of the warrant.

The justice in his affidavit says, "that the warrant was issued upon the complaint of said Michael Carney in writing, and that no witnesses were examined by this deponent, before issuing said warrant, the same having been issued upon the written complaint alone, and oral examination of said Michael Carney on oath; from which oral examination it appeared that said Michael Carney derived his knowledge and information from Mary Carney, his daughter." He further says that defendant, when brought before him for examination, put in a plea of not guilty, to the offense charged, and demanded a jury trial, which was refused, etc.

This motion to quash was denied by the circuit court; and the defendant was tried and convicted, as already stated, and the case is brought to this court upon exceptions before judgment, without a writ of error, as provided by the statute.

The same objections are now insisted upon in this court, as were raised by the plea in abatement and the motion to quash at the circuit. And it is further insisted that the arrest (as well as the examination) was void under *section 26, Article VI.,* of our state constitution, which provides, "that no warrant to search any place or to seize any person or thing shall issue without describing them; nor without probable cause, supported by oath or affirmation;" as well as under *section 32 of Article VI.,* providing that " no person shall be deprived of life, liberty or property, without due process of law; " and if these objections were good in the circuit court, the defendant is equally entitled to any benefit to be derived from them in this court upon his exceptions.

The complaint upon which the warrant was issued and the defendant was examined, is in these words:

"State of Michigan: County of Bay, ss: The complaint of Michael Carney, taken and made before me, a justice of the peace of the city of Bay City, in said county,

upon the seventeenth of May, A. D. 1873, who being duly sworn says that heretofore to wit: On the second day of May, A. D. 1873, at the city of Bay City, and in the county aforesaid, one Timothy Lynch, late of Bay City, in the county of Bay, with force and arms, in and upon one Mary Carney, a female child of the age of ten years or more, to wit, of the age of fourteen years, in the peace of the people of the state of Michigan then and there being, feloniously did make an assault with intent her, the said Mary Carney, by force, and against her will, then and there, feloniously to ravish and carnally know, and other wrongs to her, the said Mary Carney, then and there did, against the form of the statute in such case made and provided, and against the peace and dignity of the people of the state of Michigan. Whereof the said Michael Carney prays that the said Timothy Lynch may be apprehended and held to answer this complaint, and further dealt with in relation to the same as law and justice may require.

(Signed.)     "MICHAEL CARNEY.

"Taken, subscribed and sworn before me the day and year first above written.

(Signed.)     "JOHN HARGADON,
       "*Justice of the Peace.*"

It will be seen that this complaint is as positive in form as it could have been made by an eye witness of the facts, and appears by the jurat to be sworn to without qualification; and the language in which the offense is described is as full and formal as it is required to be in an indictment or information. There is nothing upon its face to indicate that complainant did not personally know the facts, nor any thing in the nature of the facts stated to make this improbable or to excite a suspicion that he testified from information and belief only, except perhaps as to the intent charged, which is generally but an inference to be drawn by a court, magistrate or jury from facts in evidence.

The statute (*Comp. L.*, § 7844) requires the justice to examine the complainant on oath (and any witnesses who

may be produced by him), though it does not require that examination to be taken down in writing, nor the evidence to be inserted in the complaint, as in the case of an affidavit for an attachment, or a warrant in civil cases. We must, therefore (without the justice's affidavit, which states the same thing), presume that the justice examined the complainant orally, not embodying the language or particular evidence given by him, in the complaint, drawing the complaint to place in proper form the charge of the offense which he thought the facts elicited on the oral examination tended to prove. The object of this examination is to enable the justice to determine from it whether there is sufficient ground for issuing a warrant to bring the accused before him for examination; and the object of that examination is, not to determine the guilt or innocence of the accused as upon a trial, but whether there is probable cause for believing him guilty; and if the justice thinks from the evidence on the examination that there is such probable cause, he is to cause him to be committed or enter into rocognizance so as to secure his presence at the circuit court for trial, as was done in this case; and it would be preposterous to suppose that any stronger evidence could be required for issuing the warrant to enable the justice to examine the accused, than is required on the examination itself.

The complaint, upon its face, being sworn to in the usual and regular manner, is amply sufficient to give the justice jurisdiction to issue the warrant and to examine the prisoner. And if it be competent in this or any other case where the jurisdiction thus appears upon the face of the papers, to go behind them, for the purpose sought by the defendant here,—which we do not mean to affirm,—we think the showing here, which was only that the warrant was issued upon the written complaint and oral examination of complainant alone, and that complainant testified only from the knowledge and information derived from his daughter, was not sufficient to show that the justice acted

without jurisdiction in issuing the warrant. It does not appear from the justice's affidavit what facts or circumstances were stated by complainant on his oral examination. And he being the father of the girl upon whom the offense is alleged to have been committed, complaints and statements made by her to him immediately after the alleged injury, in reference to it, and the appearance of the girl, would be admissible in evidence on the part of the prosecution, even upon a trial.—*Strang v. The People, 24 Mich., 1; 5 Roscoe's Cr. Ev., 863; Whart. Cr. Law,* § *1150.* And though such evidence might not ordinarily, in our view, be sufficient to require or authorize the justice to issue his warrant, yet I can readily conceive cases in which the evidence a father or mother might give from the appearance of the party claiming to have been injured, her complaints, and circumstances within their knowledge, when the justice would be authorized, and when in my opinion it would be his duty, if he thought there was reasonable cause to believe defendant guilty, to issue the warrant without waiting to take the testimony of the girl herself, alleged to be injured, who might from illness or other cause be unable to testify; or where the delay in issuing the warrant would be likely to enable the accused to escape, and there was a strong probability that he might do so.—See *State v. Hobbs, 39 Me., 212; People v. Hicks, 15 Barb., 153;* also *Pratt v. Bogardus, 49 Barb., 93* (commenting on *Comfort v. Fulton, 39 Barb., 56*). But such evidence being admissible, and having a tendency to produce in the mind of the justice the belief of the probable guilt of the prisoner, if it does produce that belief, and he issues his warrant upon it, he cannot certainly be said to have issued it without jurisdiction, though further evidence would have been more satisfactory or conclusive, nor because he has drawn stronger inferences from it than we should have drawn.—See *Johnson v. Maxon, 23 Mich., 130.*

We must, therefore, hold that the justice had jurisdiction to issue the warrant, and that the prisoner was properly examined.

In reaching this conclusion upon the ground stated, we do not intend in any manner to intimate that the issuing of the warrant and the arrest of the accused upon it must necessarily in all cases be a pre-requisite to a valid examination upon the charge of an offense not cognizable for trial by a justice of the peace, though a complaint would be; nor that the warrant and arrest are necessary for any other purpose than that of enforcing attendance of the prisoner and avoiding his escape. In the cases of offenses triable before a justice, such warrant is rendered clearly necessary by the statute, which provides that the accused is to be tried for the "charge stated in the warrant."— *Comp. L.*, § 5529. But under the statute we are now considering, he is to be examined upon the charge in the complaint; and if he choose to appear without process and submit to an examination, or if he be arrested without process (as he may be in many cases by an officer, as at common law, the officer taking the risk of being justified by the event, or the showing of probable cause), and an examination be had upon a proper complaint, I am not prepared to say the justice would not have jurisdiction to hear the examination, or to commit or bail the prisoner upon the showing of probable cause.

But these, or at least some of these, may be questions of much difficulty, upon which it is better to reserve an opinion till a case arises rendering the decision necessary.

From the views already expressed as to the nature of the offense, the complaint and the question of jurisdiction, it is clear that the offense charged is one which is not, by the statute, triable by a justice of the peace, the assault being charged with intent to commit a rape, which is a felony.

It is next urged that the evidence is not sufficient to maintain the charge in the information, with reference to the intent; by which must be understood, that there was no evidence tending to prove the act, and that it was done with the intent charged. We have carefully examined the whole evidence, and, without reciting it here, which would lead to

great prolixity, it is sufficient to say we think the evidence was sufficient to sustain all the necessary facts going to establish the entire charge, including the intent; upon this last point, it is true, the evidence was not so entirely clear and convincing as upon the other facts in the case; but it was such as to present a fair question for the jury, and upon which they might properly find the intent, as they did. And we see no reason for disturbing the verdict upon this ground.

The only other objection urged by the defendant's counsel is to the charge of the court, in reference to the age, physical development, and knowledge of the girl, and the bearing of these facts upon the question of her resistance to the acts of defendant. And to appreciate this point it is proper to say, that the girl was shown to be nearly fourteen years old, but very immature and slightly developed for one of her age, and, as the evidence tends to show, had the physical development of the parts (in the words of the physician) "merely child-like;" and that she had not arrived at the period of puberty; that menstruation had not yet occurred; and that she testified that while the offense was being committed (she being asleep when he commenced), she could not halloo; that he pressed his whole weight down on her, and held her so tight to him that she could hardly breathe; that she tried to turn over and get away from him, but could not. Fully to appreciate the nature of the charge, it is proper to cite the entire passage in which the portions objected to occur. He says: "Now, it has been said that no conviction should be had for rape where the circumstance of the resistance was equivocal, and this applies with a very large degree of force to the case of an adult female, one who is supposed to be old enough to comprehend the nature of such an act, and the purpose of it. Ravishment of a child under the age of ten years is rape, although it was done with the actual consent of the child. The law has to fix some time within which violation of the person of a female should be considered rape, for this reason, that

a child is not supposed to be capable of exercising any judgment. It is not supposed to know any thing about the nature of such an act. Now, it may be a question of fact for you in determining the intent of the party as evinced by the circumstances, and in considering the resistance which was in fact offered to him, if any. What was the age of this child? Had she arrived at such an age that she was capable of comprehending the nature of the act? Did she comprehend it when she discovered him, if that was the fact, upon her body, his naked person in contact with her's, and found that she was being hurt? Did she comprehend the nature of the act, if she had not arrived at the age of puberty? Was she of that tender age when she might not have any more knowledge or idea of it than some other child under ten years of age? Children vary very much in their knowledge of such matters, as well as of all others. Some are very precocious, and some the contrary. You have heard the testimony in regard to her condition at that time, the statement of her mother. Hence, if under those circumstances she could not form any idea of the nature of the act, or appreciate it, or if she was so weak and so powerless that she found herself in such a situation, with the pressure of his body upon hers, that she could not move, then, gentlemen, nothing of that kind could be expected of her, and you could not have the evidence that you could in the case of a strong female, capable of appreciating the nature of the act. She might not be able, from any volition of her own, to consent or dissent, any more than a child under ten years of age, because she might know nothing about whether the act was injurious or would be injurious, or of its possible or probable consequences.

"Then, gentlemen, the circumstances of the dance having occurred, the late hour at which it broke up, the natural results of acting as servant in attendance upon such a party, the fatigue, etc., the power of sleep over such young persons, all are to be considered. These are matters within

your observation and experience. What was the condition of the little girl? Was she sleeping so very soundly that her person might have been approached and interfered with to such an extent, almost without awakening her?

"Then, gentlemen, there are other circumstances to be considered. If Mrs. Lynch, the wife of this prisoner, was asleep in the next room, or not asleep, if she was in the next room, and there was a door opening, as I understand there was, from one room into the other, or only a partition between, you may inquire whether it is probable the prisoner would go into that room there and dare to make such an assault as is claimed to have been made, with the intent to accomplish his purpose, whether she made any outcry, or whether she made resistance, or not.

"Counsel have called your attention to these facts. They have also called your attention to the fact that the barroom was not a great ways off, and that there were persons remaining there. I do not know that you have any positive evidence of that from the witnesses. You have the statement of the defendant that there were several persons there, although none of them have been called here to testify that they were there. He has stated the reason why; because he could not find their whereabouts."

Now, in connection with this, and to see its full bearing, it must be considered with the following, which is found in a former portion of the charge. It is this:

"Now, gentlemen, the charge against the prisoner embraces the idea of the attempt to commit a rape upon the body of Mary Carney by the defendant. The law, defining what constitutes a rape, and referring to those circumstances which, if they exist, refute the idea that the act constituted a rape, has been read in your hearing and commented on by counsel. In order to constitute the crime of rape there must have been carnal knowledge by the defendant by force and against the will of the party ravished. This is the definition of rape; this is the thing that is prohibited, carnal knowledge by force and against the will

of the person ravished. In order to warrant a conviction, that force must be used under circumstances where the will of the party is not at all in doubt. Before you could convict of a rape you must be satisfied that the will of the party, if in circumstances to exercise the will, is entirely and wholly and violently opposed to the act, because any acquiescence to any extent on the part of the female, takes away the higher criminality; and the evidence in a case like this, where the charge is an assault with intent to commit a rape, must satisfy you that that assault was made with the intent to accomplish the purpose and to overcome any resistance that might be offered. Now, if Lynch, inflamed by passion, went to the bed of this little girl without any design of using force in accomplishing the purpose, if he did not design to use force in case he should be resisted by force, if he did not design to overcome any force that might be offered in resisting him, but with the design only to accomplish his purpose if he could do so without violence, that is, without force beyond the force necessary for the act of coition, then he is not guilty of this offense. If he got into the bed of this little girl and exposed his person, brought his person in contact with hers, under the circumstances detailed, he was guilty of a most gross and outrageous assault and battery. But unless he did this with the intent to overcome any force that might be opposed to him in the accomplishment of his purpose, he is not guilty of the assault with intent to commit a rape. But, gentlemen, if you are satisfied from the circumstances detailed in evidence, that he did make the attempt to have sexual intercourse, carnal intercourse with this girl, and that he did this with the intent to accomplish it at all events, by his strength and power, against any resistance that might be offered to him, then he is guilty of an assault with intent to commit a rape, no matter whether he actually committed the rape or not."

Again: "Now, gentlemen, it was the duty of the prosecution, unquestionably, to prove the whole of this case,

and they were called upon, before the defendant was required to make any defense, to show affirmatively a state of facts which would warrant a conviction. In order to do this they called the person assaulted, or supposed to be. She gives her relation of what took place, of the facts as she assumes them to be, gives you, if you please, a connected history. You hear her statement. If that was all, gentlemen, it would be dangerous to convict, because when such violence is used, evidence of the violence must be left upon the person, especially when the female is of tender age, and more especially where she has not arrived at the age of puberty, and where the organs are small. It is assumed that under such circumstances the evidence of what is done will naturally be exhibited by the girl to her immediate guardian, or parents, as the case may be, that she will make some complaint at once, and state the facts, and afford the opportunity for investigation. What did this little girl do? Was her conduct perfectly consistent with the idea that her story was true? Did she go to her mother as soon as she had an opportunity, and did she tell her as soon as she had an opportunity? If she did, that is perfectly consistent with the facts as she stated them here. The mother is called; you heard what she said. That she stated the facts to this man's wife, he tells you in his statement to you of the facts, and that she believed it, or appeared to believe it. And he states to you what conduct on her part resulted from her believing this girl's statement, although he says it was false. The girl states to you that she told another woman, Mrs. McCarty, I think it was. Mrs. McCarty might be called here to further corroborate this girl. Is the corroboration sufficient, in your estimation, to enable you to believe her story? That is the question. It is the duty of the prosecuting attorney, and he has attempted to do it in this case, to show that this little girl, immediately after she assumes that the violence was used, made complaint of the violence, to the persons to whom she would most naturally go for that pur-

pose. Who more naturally than her mother, or the woman who stood towards her for the time being in the relation of mother or guardian, employer, the woman in whose service she was? If she had given a different statement of the facts to Mrs. McCarty, and that had been shown on the other side, that would have detracted very much from her credibility. There is this omission to produce Mrs. McCarty here. It does not appear, so far as I know, but what she might have been produced, but the prosecuting attorney exercises his own judgment, and when he deems that he has corroborating circumstances enough, which he thinks ought to satisfy the jury, he is justifiable in omitting any particular exertion to go to the utmost in procuring evidence of all possible corroborating circumstances. The question is for you how far it should weigh.

"Another mode of corroborating the statement of the principal witness would be by showing the condition of her person immediately after, and it would perhaps be as satisfactory as any thing that could be proven to you for that purpose, if an examination had been made immediately, either by the mother or by a physician called for that purpose, immediately after this thing is alleged to have occurred. I say that would have been perhaps more satisfactory as a corroborating circumstance than any other. I do not recollect that there has been any testimony tending to show that any examination whatever was made of her person, either by her mother or any one else, until she was examined by Dr. Gates. You have heard the testimony of the physicians, and it is proper that I should call your attention to their testimony. It may leave no doubt, gentlemen, upon your minds but what violence had been used upon the girl, either by herself, or by some accident, or by some other person. But does that examination, made so long afterwards, satisfy you that that violence, the results of which were apparent upon her person on the 18th or 19th of May, were the result of violence caused by this defendant on the first of May? The physicians cannot tell

the precise time when the violence was used, but they are the best judges that we can have, from the fact that they are treating all kinds of diseases and difficulties that flesh is heir to, physically, and we make them our guides in such matters. You have heard these physicians say, that from the appearances they should think that this violence might have been committed or have occurred eight or nine days previous, but not one of them has told you that the appearances that were then exhibited upon her person, were the result of violence occurring eighteen days previous; and this one difficulty in corroborating this witness arises from the fact that, for some reason or other, whatever the reason may be, this thing was neglected so long it deprives you of the evidence of the fact which might have been, of itself, of the utmost importance in guiding your judgment. Nevertheless, it is only a fact in the case, and you can believe this girl's statement if you deem it sufficiently corroborated, and whether these indications were the result of that violence, or some other violence occurring afterwards, does not necessarily preclude the idea that the violence which she complained of was committed. This is a question for you to determine from the facts and circumstances."

Now, we think, when the portion of the charge complained of is considered in connection with the other portions of the charge cited above, it could not have misled the jury to the prejudice of the defendant. And though ordinarily a girl of the age of this one might be presumed to understand the nature, to some extent the consequences, of the act in question, we do not, by any means, consider that presumption conclusive as one of law. And with reference to the question of resistance, and the extent of effort to resist, it is very proper for the jury to consider the age, strength and capacity, mental and physical, of the person upon whom the offense is alleged to have been committed, as these facts appear in the evidence.

Upon a consideration of the whole case we think no

error was committed on the trial which could operate to the prejudice of the prisoner.

It must be certified to the circuit court, that there is no error in the proceedings, and that judgment should be given upon the verdict.

CAMPBELL and COOLEY, JJ., concurred.

GRAVES, CH. J., did not sit in this case.