## Albert Turner v. The People.

*Criminal law: Preliminary examinations: Specific finding: Statute construed.* Under our statutes it is not requisite that an examining magistrate should make and return or keep any record of a specific finding as to the commission of the offense charged, or as to there being probable cause to believe the accused committed it, but if he either let him to bail or commit him for want of bail or because the offense is not bailable by a justice, and certify and return all the examinations and recognizance, that is all the statutes contemplate as essential as the basis for filing an information.

*Criminal complaints: Offenses not cognizable by a justice.* A complaint for the arrest of one charged with an offense not cognizable by a justice is not required to set forth with precision and in formal and distinct terms the exact criminal act to be inquired into and prosecuted; the complaint is not designed to fix and control the after proceedings as to the title of the offense or the date of it; but it is the examination on oath which immediately follows, and is required as a consequence of the complaint,

TURNER *v.* PEOPLE.

that is to guide the magistrate in deciding whether a warrant ought to issue, and if so, for what.

*Informations: Preliminary examination: Offense charged.* It is not competent to charge in an information an offense for which no preliminary examination has been had or waived; and to determine whether such an examination was had as to any specific offense charged in the information, recourse can be had only to the examinations returned and filed by the magistrate.

*Criminal complaints: Examination: Rape: Time.* A complaint and examination which, though informal and inartificial, contains the substance of a charge upon oath that the accused committed the crime of rape on complainant, at a placed named, on or about January 4, 1873, and also between January 20, 1873, and September 30, 1874, is sufficient to authorize the magistrate, and to make it his duty, to issue a warrant for the arrest of the accused.

*Rape: Preliminary examination: Time of alleged offense.* And upon the arrest of one thus accused, it is competent and the duty of the magistrate to inquire, on the preliminary examination of the prisoner, in regard to the commission of the offense on any particular occasion between January 20, 1873, and September 30, 1874.

*Preliminary examinations: Trials: Criminal pleadings: Precision.* A preliminary examination before a justice is in no proper sense a trial, and the rules and principles which govern in respect to the frame and construction of criminal pleadings, the scope and import of trial issues, and the relevancy of evidence thereto, are not applicable to such proceedings.

*Preliminary examinations: Identification of offense: Time: Informations.* Where the depositions taken on the preliminary examination specify and identify by a number of coincident facts and circumstances a particular offense which the complainant states she thinks was in May, 1874, this will justify an information charging the offense as of May 5, 1874, and a conviction based upon evidence tending to prove the identical offense thus identified and singled out.

*Informations: Time: Variance.* Time is not an ingredient of a criminal offense in any such sense as to make it necessary to charge it precisely according to the truth; but the information or indictment may state one time and the proof show a different one without involving an objectionable variance.

*Rape: Resistance: Fear.* The submission to the jury in a trial for rape of the question whether the accused put the prosecutrix in such fear as to preclude her from offering resistance, is held not error.

*Practice: Exceptions.* The practice of taking general and obscure exceptions at the moment, in order to cover the case and enable counsel on subsequent critical examination to raise points which have never been suggested at all to the mind of the trial judge, is objectionable on many grounds, and is contrary to the theory upon which points are allowed to be raised by exceptions.

*Rape: Resistance: Threats: Fear.* Evidence given in explanation of delay on the part of the prosecutrix in making complaints, that she, being a young girl, and living in defendant's family, was afraid to go away for fear he would bring her back and treat her worse than ever, and that he threatened to kill her if she exposed him, is not open to the objection that it tends only to show the fear of a future possible or threatened danger, and not one presently impending.

*Rape: Delay in making complaint: Res gestæ: Credibility.* Delay in making complaint is not a fact belonging to the *res gestæ*, but is only mate-

TURNER v. PEOPLE.

rial as bearing upon the credibility of the prosecutrix; and the credibility of her testimony, like that of other witnesses, is a matter for the consideration only of the jury.

*Allegation of error: Record.* An allegation of error will not prevail unless the record as made up affirmatively shows that the error alleged was in fact committed.

*Practice: Charge to the jury: Allegation of error: Record: Presumptions.* Where complaint is made of a charge to the jury, in reference to a claim that the credibility of the prosecutrix as a witness was destroyed by her denial on cross-examination of having given certain testimony before the examining magistrate, which suggested that the deposition taken before the magistrate might not contain the exact words of the witness, but the bill of exceptions does not set forth the deposition or the cross-examination, nor show that the deposition contained in fact what the witness denied, it will not be presumed in support of the allegation of error that there was a material variance between the deposition and the testimony such as to involve a substantial contradiction under oath.

*Charge to the jury: Rape: Character of prosecutrix.* A proposition in a charge to the jury in a rape case, that it made no difference what the complaining witness did before or since the act if the defendant committed the crime as alleged, is construed, in connection with the rest of the charge, which explicitly submitted to the jury the question of the credibility of the prosecutrix and the reasonableness and probability of her testimony, to mean no more than that if the imputed fact was committed it was equally a rape whether the character of the prosecutrix was good or bad, and so construed is held not to be error.

*Heard January 14 and 18. Decided April 5.*

Error to Huron Circuit.

*R. Winsor, C. H. Gallup* and *H. B. Carpenter,* for plaintiff in error.

*Andrew J. Smith, Attorney General,* for the people.

GRAVES, J:

Turner was convicted in June, 1875, in the circuit court for Huron county, upon a charge of rape on Emma Thompson in May, 1874, and is now undergoing sentence given on such conviction.

On arraignment in the circuit court, and before pleading, he moved to quash the information on the following grounds, in substance:

*First,* That he had never been examined on the specific charge set out, or had waived his right to be examined in regard thereto;

*Second,* That there had been no finding made by an examining officer that the offense described had been committed, nor any adjudication or finding by any such officer that he, Turner, was probably guilty of such offense, nor any determination requiring him to appear and answer to a charge therefor before the circuit court.

As matter of fact, he had been examined before a justice of the peace, under a complaint and warrant imputing to him a charge of rape upon Emma Thompson, named in the information, and these proceedings having been certified by the justice to the circuit court and there filed, the prosecuting attorney had based the information upon them. And on presenting the motion to quash, these proceedings were relied on by the plaintiff in error as evidence to support the motion, and his counsel read the complaint and warrant of arrest, the return made by the justice, and a portion of the examinations to establish the correctness of his position.

The court overruled the motion and required the plaintiff in error to plead, and he thereupon pleaded not guilty. On the coming in of the verdict, a motion in arrest of judgment was made, based upon the same ground as the motion to quash, and this the court likewise overruled. These, and other rulings, made in charging the jury, are now before us in a bill of exceptions brought up on writ of error. As the two motions raise the same questions, there is no need for separate consideration.

The grounds of the motions, in the form in which they were stated, were deductions of the mover, and the true points contended for can hardly be apprehended without explanation; and this can only be obtained with fullness by recurring to the brief and arguments.

As already intimated, the plaintiff in error practically asserted that there had been a complaint, a warrant of arrest and an examination. The real claim was, that these proceedings were defective and were not competent to be a basis for an information charging an offense on May 5, 1874.

The substance of the argument may be indicated by three propositions:

*First,* It was indispensably necessary that the complaint prior to the warrant should distinguish and charge the precise criminal act, to be followed up by a warrant and examination, and that the subsequent examination was required to be exclusively referred to such charge, and the respondent was not liable to be held, in consequence of the proceedings, for any other charge; that neither the complaint nor examination marked out a charge as one on which Turner was to be held for an act done on May 5, 1874;

*Second,* If the complaint was valid to support an examination for any specific criminal fact, it could be so deemed only by considering it as identifying and alleging an offense on the 4th of January, 1873, and the complaint being thus construed, the whole examination of Turner was required to be confined, and must be referred to the specific transaction so pointed out, and it could not have been legally extended, and cannot be referred to a transaction of a later date by several months;

*Third,* It was indispensable for the legal completion and shaping of the proceedings to warrant an information, that the justice should have found that the specific offense alleged had been committed, and that there was probable cause to believe that Turner committed it. It was likewise necessary that such findings should be certified to the circuit court by the justice.

Assuming for the present that the proceedings before the justice were not impeachable for any thing suggested in the first and second propositions, but were a sufficient foundation for the information notwithstanding, it is then, we think, pretty clear that the objection implied by the last proposition was unwarranted.

The statute requires the justice, after "an examination of the whole matter," to come to an opinion as to whether or not an offense has been committed, and if of opinion that there has been, then as to whether there is probable cause

to believe the accused guilty thereof, and thereupon to discharge or hold him to answer, according to the conclusion reached.—§§ *7859, 7860, C. L.* But no record of a specific finding one way or the other is required to be kept or certified to the circuit court. If on "examination of the whole matter" it appears to the justice that an offense not cognizable by him has been committed, and that there is probable cause to believe the accused guilty, it is then the duty of the justice, if the case is bailable by him and sufficient bail is offered, to accept it and discharge the accused; and on the other hand, if the offense is not thus bailable, or being thus bailable if no sufficient bail is tendered, it is then the duty of the justice to commit the accused for trial.

In case the accused is held for trial the justice is required to "forthwith certify and return all examinations and recognizances" to the clerk of the court where the accused is bound to appear, and in case of failure the court is expressly authorized to compel return.—§ *7867, C. L.* In case the justice commits for want of bail, he is commanded to certify on the mittimus the sum for which bail was required.— § *7875, C. L.*

This mittimus would naturally recite the conclusion reached on examination, but the mittimus is not an authority for filing an information. It is simply an authority to the sheriff and jailer to receive and hold the accused, and it is not to be filed in court or with the clerk. When the examinations and recognizances given by the accused and by witnesses are certified and returned, the statute is satisfied, and if bail is given, a return of the recognizance affords strong record evidence of the conclusion which the justice must have reached. The fact of taking bail imports the decision of the justice, and the fact of giving it imports a recognition of it by the accused. In the present case the plaintiff in error gave bail, and the justice certified the examinations.

The next point relates to the necessity of setting out in formal and distinct terms in the complaint the precise criminal act to be inquired into and prosecuted.

TURNER *v.* PEOPLE.

When, as in this instance, the complaint concerns an offense not triable by a justice, no such formality as the objection supposed is at all necessary. The statute does not intend it, and the nature of the proceeding makes against the propriety of exacting such formalities.

The fact itself of a complaint is needed to set the law in motion; but the statute does not prescribe any form in which the complaint must be made, and does not, in terms at least, even require that it shall be made in writing. Apart from some exceptional cases, as for adultery, it may proceed from any one, however illiterate or however unversed in the forms of procedure, who is able from acquaintance with facts to inform the magistrate that some particular crime a justice cannot try has been committed. Indeed, except in respect to special cases, as before mentioned, the law makes it the duty of every one, however unskilled in technical knowledge or uneducated, to inform against criminals, and failure to perform the duty cannot be answered by setting up inability to describe crime in the language of the law, or inability to read and write. Upon the fact of a complaint, the magistrate is moved to act. Then he must examine on oath the complainant and witnesses produced, to ascertain the truth, to develop particulars and find out whether there is proper cause, and if so, of what nature, for the issuance of a warrant. Whether there is ground for a warrant, and if so, for what, is not supposed to be necessarily made known by the complaint, and the law does not assume that the complaint must fix and control the after proceedings in regard to the title of the offense, or the date of it.—*People v. Annis, 13 Mich., 511.* The examination on oath, which immediately follows and is required as a consequence of the complaint, is the proceeding which the statute looks upon as the one to guide the magistrate in deciding whether a warrant ought to issue or not, and if so, for what.—*People v. Lynch, 29 Mich., 274; Pardee v. Smith, 27 Mich., 33.* The statute says expressly that "if it shall appear from such examination that any criminal

33 MICH.—47.

offense not cognizable by a justice of the peace has been committed, the magistrate shall issue a warrant," etc., "reciting the substance of the accusation," etc.—§ *7845, C. L.*

True it may often happen that the complaint is at once reduced to writing, and that the examination preceding the warrant is combined, but the admissibility and reasonableness of such a course cannot add to or change the legal significance and requisites of a complaint.—§§ *7844, 7845, 7855, 7859, 7860, C. L.;* and §§ *2, 3, 13, 20, 21, of Tit. 2, Pt. 4, ch. 2, N. Y. R. S. of 1830; Stewart v. Hawley, 21 Wend., 552; Payne v. Barnes, 5 Barb., 465; People v. Hicks, 15 Barb., 153.*

Another circumstance tends to show the nature and office the legislature ascribed to the complaint and other proceedings prior to the warrant. The law contemplates that there is no necessity that the magistrate who examines after the arrest, and who must decide whether the accused shall be held or not, should have before him the complaint or any of the proceedings prior to the warrant. Because it is expressly provided that if the magistrate who issues the warrant is absent or unable to attend, the accused shall be taken before some other magistrate of the same county, and that the warrant, with a proper return thereon, signed by the person who made the arrest, shall be delivered to the magistrate.—§§ *7850, 7851, C. L.* The law here contemplates that the warrant will contain the substance of the accusation as shown by the examination made before its issue.—§ *7845, C. L.* With the exception of some few amendments not material to the present inquiry, this chapter for the arrest and examination of offenders was made before the law of 1859 allowing criminal prosecutions on information, and it was established as a branch of a system of criminal procedure which did not permit one held on examination for a criminal offense to be arraigned for trial until after an investigation by a grand jury, and an accusation by that tribunal through the form of an indictment. In view of

such an arrangement, there could be no pretense for requiring any thing technical in the structure of the proceeding to initiate the first inquiry, and which at the most could only eventuate in holding the party subject to the action of a grand jury. The fact that the intervention of that tribunal is now made not essential cannot add, however, to the legal provisions as to the form and function of the preliminary complaint. The law is set in motion, and the magistrate caused to act, in the same way now in the first stage as when the accused could be tried only after indictment.

The remaining question raised by the motions is, whether upon the strength of the examinations returned the prosecuting attorney was authorized to inform for the act described in the information.

The statute provides that no information shall be filed against any person for any offense until such person shall have had a preliminary examination as provided by law, unless the right thereto is waived.—*S. L. 1859, pp. 391, 393, § 8.* And it provides likewise that the prosecuting attorney shall inquire and make full examination of all the facts and circumstances connected with any case of preliminary examination touching the commission of any offense, and in case he determines that an information ought not to be filed, he shall file with the clerk his statement of reasons in law and fact for not informing, "provided that in such case such court may examine said statement, together with the evidence filed in the case, and if upon such examination the court shall not be satisfied with said statement, the prosecuting attorney shall be directed by the court to file the proper information and bring the case to trial."—§ *6 of act of 1859*, as amended in 1863, *S. L. 1863, p. 279.*

In the present case the prosecuting attorney decided to inform for the offense set up in the information, and the court, on the motion to quash, decided that the "evidence filed in the case" authorized it.

If it appears, however, that as to the offense charged in the information there had been no preliminary examination,

then it was not competent to inform for it, and the prosecuting attorney and the court were equally at fault.

But in order to ascertain how this is, we can only have recourse to the "examinations," or in the equivalent terms of the proviso, to the "evidence filed in the case." Because no other matter of evidence is required to be returned and filed (§ 7867, *C. L.*), and it is to such evidence the prosecuting attorney is plainly referred in order to shape his information, and the same evidence which is to govern the court when directing a "proper" information to be filed. All the regulations point to it as the evidence to discriminate the criminal act to be laid, and to disclose its class and character. Indeed, on this subject the law appears clear when the various provisions are examined and compared.

Before proceeding to introduce the charge as preferred in the information, or any of the "examinations" or "evidence" certified and returned by the justice, it seems proper to advert to the views heretofore expressed by this court in four or five cases in regard to the nature and purpose of these examinations, and the construction they should receive.

It was observed in *Hamilton v. The People, 29 Mich., 173, 176,* that "the justice in these examinations does not act judicially in the technical sense, but in his capacity of a conservator of the peace, and the proceeding is one which at common law was conducted very much at discretion." In *People v. Lynch, 29 Mich., 274–9,* the court say in regard to the examination after warrant, that "the object of that examination is, not to determine the guilt or innocence of the accused, as upon a trial, but whether there is probable cause for believing him guilty ; and if the justice thinks from the evidence on the examination that there is such probable cause, he is to cause him to be committed or enter into recognizance so as to secure his presence at the circuit court for trial." In *Lightfoot v. The People, 16 Mich., 507, 512,* a majority of the court then sitting, in speaking of the force and use of depositions taken on examinations and returned by the justice, observed that the law

"presumes that those statements of witnesses were the only ground on which the prisoner was regarded as worthy of being charged as culpable, and put upon his trial for the offense alleged." *Hanna v. The People, 19 Mich.. 316,* was a case where the prisoner was informed against for an assault with intent to murder, being a felony, but the jury convicted him of assault and battery, being a misdemeanor; and the point was made, that he had never been examined on the charge of a misdemeanor, but the court said, *p. 323:* "This being included in the charge of the felony, an examination upon the transaction claimed to constitute the higher offense was an examination upon the minor charge included in it."

The subject is further alluded to in some of these and in other cases, but is noticed with the most particularity in the earlier case of *The People v. Annis, 13 Mich., 511,* and not, as incorrectly entitled in the report, *Annis v. The People.* After referring to the law for prosecuting by information, and the preliminary examination contemplated, the court say: "The examination under this statute was designed to some extent to accomplish the purpose of a presentment by the grand jury under the law as it existed before, in protecting a party against being subject to the indignity of a public trial for an offense, before probable cause had been established against him by evidence under oath. But it was never designed that the complaint or warrant before the magistrate should stand in the place of a formal presentment, nor that in the circuit court the prosecuting officer should be limited by it in the mode of charging the offense. It is undoubtedly competent for him, so long as he does not undertake to proceed against a person for a different transaction than that to which the examination relates, to put his information in such form as in his opinion will enable him to try the offense on its merits in the way most effectually to advance the ends of justice."

On turning to the record in the case before us, it appears that the complaint was reduced to writing, and that the

examinations previous to the warrant were combined with it, and were recited at length in the warrant.   Those proceedings were all taken on the third of May, 1875, and, as the record states, the complaint and the examination before warrant were as follows:

" STATE OF MICHIGAN, HURON COUNTY,—ss.

" The complaint and examination on oath and in writing of Emma Thompson, of the township of Lake, taken and made before me, George McKay, a justice of the peace for the township of Lake in said county, upon the third day of May, A. D. 1875, who, being duly sworn, says that heretofore, to-wit: on the fourth day of January, A. D. 1873, at the township and in the county aforesaid, Albert Turner, late of the township of Lake, in the county of Huron, on the fourth day of January, in the year of our Lord one thousand eight hundred and seventy-three, with force and arms, at the township aforesaid in the county aforesaid, in and upon one Emma Thompson, a female of the age of ten years or more, to-wit: of the age of thirteen years, then and there being, violently and feloniously did make an assault, and .her, the said Emma Thompson, then and there by force and against her will, feloniously did ravish and carnally know, against the form of the statute in such case made and provided, and against the peace and dignity of the people of the state of Michigan.   And Emma Thompson aforesaid, upon her oath aforesaid, does. further say, that heretofore on other times, to-wit:  on the twentieth day of January, A. D. 1873, and on divers days and times between the said twentieth day of January, A. D. 1873, and the thirtieth day of September, A. D. 1874, at the township of Lake and in the county of Huron aforesaid, Albert Turner, late of the township of Lake in the county of Huron aforesaid, in and upon one Emma Thompson, single woman and not the wife of the said Albert Turner, a female of the age of ten years or more, to-wit: of the age of thirteen years, then and there being, violently and feloniously did make an assault, and her, the said Emma Thompson, then and there by force

and against her will, feloniously did ravish and carnally know, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the state of Michigan; wherefore the said Emma Thompson prays that the said Albert Turner may be apprehended and held to answer this complaint, and further dealt with in relation to the same as law and justice may require.

> her
> "EMMA + THOMPSON.
> mark

"In presence of James H. Hall.

"Taken, subscribed and sworn to before me the day and year first above written.

> "GEORGE MCKAY, *Justice of the Peace.*"

However informal and inartificial, this complaint and examination certainly contained a charge upon oath that Turner had committed the crime of rape on complainant in Lake township in Huron county, on or about the fourth day of January, 1873, and also between the twentieth of January, 1873, and the thirtieth of September, 1874, and the justice concluding therefrom that a "criminal offense not cognizable by a justice of the peace had been committed" *(§ 7845, C. L.),* and that an examination on oath in Turner's presence ought to be had "in regard to the offense charged, and in regard to any other matters connected with such charge" which the examining magistrate might deem pertinent on such examination *(§ 7855, C. L.),* proceeded to cause Turner's apprehension, to the end that he might "be dealt with according to law."—§ *7845.*

In this the justice was certainly correct. There was sufficient not only to prompt him to act, but to make it his duty to act, and there can be no possible question but that he had full jurisdiction on the strength of the complaint and examination to take steps under the statute to call Turner before him for the purpose of a due investigation in Turner's presence. And there can be no question but that it was perfectly competent, if not a duty, to inquire upon

such examination in regard to the commission of the offense on any particular occasion between the 20th of January, 1873, and the 30th of September, 1874. The statute contemplates an inquiry, to find out whether reasonable ground exists for going further, and the proceeding in no proper sense is a trial, and an application to it of the rules which govern in respect to the frame and construction of criminal pleadings, the scope and import of trial issues, and the relevancy of evidence thereto, would go far to defeat its object. To answer any useful purpose the inquiry must not be hampered by the restrictions which are wisely provided for the later proceedings, and without sacrificing or infringing any privilege or benefit the party implicated may regularly claim, the examining magistrate must be allowed the exercise of a large discretion. And the range and essence of this discretion must be judged of in view of the fact that it pertains to a preliminary examination or inquisition to see whether a trial or definite investigation ought to be had, and not to such trial or definite investigation itself. It would be absurd to apply the same principles to an investigation designed to find out whether grounds exist for making a precise and formal accusation, that are proper after the grounds are regularly disclosed. So long as they are not ascertained, they are not to be set up as something to control the inquiry carried on to ascertain them.

Acting upon the opinion that the investigation was not required to be confined to the first allegation in the complaint and warrant, the justice extended it to the second, and this was clearly authorized. But the only evidence on the subject inserted in the record consists of a part of the deposition made by the complaining witness. It is unnecessary to repeat it here. It is very distinct and clear in the details and in its relation of facts and circumstances going to single out and identify a particular offense, and the witness states that she thinks it was in the month of May, 1874. The occurrence is minutely particularized in other respects. A large number of coincident facts are

given, and among them she stated the act was committed in the sugar bush; that in. the forenoon of the same day herself and Turner's wife went out to gather what sap remained in the troughs, in order to. make vinegar of it; that between eleven and twelve Turner came to the bush and told his wife to go to the house and get dinner; that witness inquired if she did not want her help, and that Mrs. Turner said she did not and then left°for the house; that Mrs. Turner returned, but .during her absence, and just before her return, the criminal.act was done; that shortly afterwards . Turner and his wife. and the witness proceeded to the house, and that on the way there, upon her refusal to allow him to take hold of her hand and assist her to jump from a log across some water, he broke off a basswood sprout and struck her with it several times, and that she then screamed; that they reached the house and had dinner; that the next day or two Lizzie Devine called at the house and stated that she and her sister were looking for cows and wanted to know if it was witness who screamed, alluding evidently to the outcry said to·have been made during the return of witness from the sugar bush to dinner.

By this evidence the transaction it referred to was liquidated and identified by the group of facts specified, with their mutual relations, as plainly as a well ascertained locality is marked and denoted by the nature, shape and relations of its numerous physical monuments. True, the precise date was not stated in terms, and it was not indispensable that it should be. The witness mentioned the time, but not positively, as in May, 1874, and there is nothing shown to discredit the correctness of the statement. There is no room for claiming that the least ambiguity existed in regard to the identity of the transaction referred to in this evidence, and no ground for saying there was no preliminary examination in regard to it. The prosecuting attorney had to gather from the examination the identical fact for which to accuse, and the foregoing evidence afforded him the means,

but it did not afford him the means to enable him to state positively and certainly the exact day.

This, however, was not important so long as the facts and incidents precluded all doubt respecting the identity of the transaction to be prosecuted, and so long as it was manifest that the act was recent enough to be subject to prosecution, and that a preliminary examination in regard to it had been had. Time is not an ingredient of the offense in any such sense as to make it necessary to charge it according to the truth. The information or indictment may state one time and the proof show a different one without involving an objectionable variance.—§ *7923, C. L.* The deposition of the complaining witness, as we have seen, tended to show that the transaction at or near the sugar bush was in May, 1874, and it does not appear that the evidence on examination tended to show any other in that month. The information preferred a single charge, and in the usual form laid the act as of May 5th, 1874. There was nothing more in the description of the offense in the information to point out the transaction aimed at, but there is no rule of criminal pleading which requires the setting out ear marks or the identifying facts and incidents elicited on examination. They must be matter of proof on trial. Still the information was grounded on the examination, and that confined the prosecution within limits. It is not pretended that the information was otherwise than good upon its face, and as the charge was shaped in it, the affair at or near the sugar bush was provable to support it without raising any question of variance from the information or the examination.

Passing to the later proceedings, it may be well to see whether in fact the charge in the information was applied to the affair at or near the sugar bush or to some other.

The bill of exceptions does not set forth the evidence, but in a very brief and general manner speaks of its tendency, and in mentioning that says in substance there was.

evidence tending to prove that Turner committed the offense in question on Emma Thompson "some time in the fore part of May, 1874," and that this was the first offense proved on the trial. No mention whatever is made of any of the facts and incidents which would particularize the transaction and identify it with or discriminate it from the affair before alluded to. That there was evidence, however, that the transaction of the fore part of May was the same as that described as having occurred at or near the sugar bush, and that the conviction was on account of that transaction, appears clearly from the record. The second, third and fourth propositions of the judge's charge, which were not excepted to, make this matter very plain. These propositions are as follows:

"2. Under the statute the people charge that Albert Turner had connection with the girl Emma Thompson on or about May 5th, 1874, by force and against her will.

"3. This is the time the girl claims she was forced at or near the sugar bush, and of the rape at this time and place the defendant must be convicted, if convicted at all.

"4. She has been allowed to testify as to other times and places for other purposes; but he can only be convicted of a rape at the time and place charged. If he is not guilty of that, no matter how many other offenses he committed, he cannot be convicted here unless he committed the particular one charged."

The conclusion, then, on this part of the case is, that the plaintiff in error had a preliminary examination in regard to the transaction said to have occurred at or near the sugar bush in May, 1874; that on such examination the justice held him to answer for said transaction; that the prosecuting attorney informed against him on account of it; that he was tried therefor and finally convicted thereof.

Error was assigned on a portion of the charge which submitted to the jury whether Turner put the prosecutrix in such fear as to preclude her from offering resistance to the commission of the criminal act, but this objection is very

properly abandoned.    The brief does not allude to it.—
*Strang v. The People, 24 Mich., 1; Don Moran v. The
People, 25 Mich., 356.*

It is next objected that the judge erred in charging in
regard to the delay of the prosecutrix in making complaint.
The instructions bearing on this subject were as follows:

"I trust you all understand that one charged with crime
is presumed innocent; that the people must satisfy the jury
that he is guilty or he cannot be convicted; as is commonly
said, the presumptions are in favor of the prisoner, and the
jury must be satisfied beyond a reasonable doubt that he is
guilty before they convict.

"Ordinarily it is deemed suspicious that a complaint is
not made at once after the alleged commission of the offense,
and in this case it appears that no complaint was made, ex-
cept, perhaps, to Mrs. Turner, until long after the crime is
said to have been committed.    The prosecution seek to explain
this by offering evidence tending to show that she dared not,
through fear of Turner, make any complaint.

"If the long delay is accounted for to your satisfaction,
then the delay would not prejudice her story; but if with-
out some good and sufficient excuse she delayed some ten or
twelve months to expose her destroyer, and then only told
her story when she herself was charged with a crime, it is,
to say the least, a circumstance against the truth of her
story.    The whole question of the credibility of the girl
Emma and the other witness is for your consideration.    The
reasonableness and probability of the evidence given must
not be lost sight of.    Starting, then, with the presumption
of innocence, have the people convinced you that the defend-
ant is guilty of the crime charged.    If they have, your
verdict will of course be guilty; but, on the other hand, if
you are not convinced of his guilt, you will say not guilty.
Let us have neither fear, love, nor favor in deciding this
question.    If the man is innocent, it would be a terrible
thing to doom him to a term of years in state prison.    If
he is guilty, as the girl Emma says, he is an unsafe man

to have loose among the wives and daughters of the good people of Huron county. Consider carefully; weigh well; determine impartially; and render such a verdict as your judgments approve."

The evidence concerning this point, and to which the charge had reference, is not set out. But the bill of exceptions states that the evidence adduced by the people tended to show that the prosecutrix was fourteen years and four months old on the 5th of May, 1874; that she commenced living in Turner's family January 2d, 1873, and continued to live there until about April 26, 1875; that she was prevented from making complaint, and from leaving the family and seeking protection elsewhere, by Turner's harsh treatment of her, and because she was afraid that if she left he would bring her back and treat her worse than before, and because he threatened to kill her if she told any one what he had done; but that she did complain to Turner's wife after each violation of her person, but to no one else until about the 26th of April, 1875.

The bill states also that evidence was given by Turner tending to show that the prosecutrix before entering his family had been for several years an inmate of a public poor house in Bay City, and had lived at several different places in Huron county; that she had repeated opportunities to leave Turner's family, and to communicate with neighbors, between January 4, 1873, and May 5, 1874, and between that date and April 26, 1875, and had not done so, and had never in any way made complaint to Turner's wife that he had violated her person; and that when she first complained to any one of the offense charged in the information or of any other outrage against her person by Turner, she was under arrest on a charge of having concealed the death of a bastard child.

It does not appear that Turner's counsel made any request or suggestion for any charge on this subject, or the modification of that given, or even intimated any reason for being dissatisfied with it. We find simply and barely in the record

that the plaintiff in error excepted "to that part of said charge which instructs the jury that if the delay in making the complaint is explained to the satisfaction of the jury, such delay ought not to prejudice the story of the complaining witness." Now, this exception touches only a single sentence in one of the several propositions of the charge relating to the delay in making complaint and to the evidence given to explain the delay, and the matter to which the exception is confined has a very different meaning when read in connection with the context from what it has when read separately and abstractly. If this single passage was unsatisfactory, fairness to the court and the course of justice suggested it as a duty at the very time to make known to the court the true nature of the objection in some regular way. By such action the judge would have had the benefit of the explanation in season to set the direction right if the reasons indicated were such as to satisfy him he had made a slip.

The practice of taking general and obscure exceptions at the moment, in order to cover the case and enable counsel on subsequent critical examination to raise points under the exceptions which have never been suggested at all to the mind of the trial judge, is objectionable on many grounds, and is contrary to the theory upon which points are allowed to be raised by exceptions.—*Adams v. State, 25 Ohio St., 584.* The substance of the argument made here in favor of the exception, as gathered from the brief, is, that the evidence of fear adduced to explain the delay only tended to show the fear of a future possible or threatened danger and not one presently impending, and that no such fear, if it existed, could be admitted to excuse delay. And, further, that the charge was unfair to Turner, inasmuch as it made the evidence prominent which was given to explain the delay and nearly ignored or suppressed the force of the circumstances having a counter tendency. The reasoning in regard to the kind of fear shown and that required to be shown is not well based or sound. According to the record, the

prosecutrix swore she feared that if she left, Turner would bring her back and treat her worse than ever; and, further, that he threatened to kill her if she exposed him; and if in her situation and under the circumstances as they appeared to her, these considerations actually kept her in such fear that she dared not complain against him, it was then a fear which had constant operation, and the circumstance that the violence she was caused to fear could not be expected to take place at the very time she should expose him, but only afterwards, was of no importance. There is no room for saying, in view of the facts indicated by the record, that what the prosecutrix claims to have feared was, as a ground of fear, too far off and uncertain to preclude a jury from finding that the fear itself was enough, as she was situated, to deter her from complaining sooner than she did.

Now, whether a prosecutrix makes early complaint or not, is not a fact belonging to the *res gestæ* at all. It is only material as bearing upon the credibility of her evidence.— *3 Greenleaf Ev.*, § *213*. She is a competent witness, and if sworn and examined, "the credibility of her testimony, and how far forth she is to be believed, must be left to the jury upon the circumstances of fact that concur in her testimony." And one of the circumstances having a strong tendency to show that her testimony is false or feigned is her concealment of the injury for any considerable time after she has opportunity to complain.—*4 Black. C., 213, 214.* But there is no iron rule which requires complaint to be made within this or that time. She must have opportunity, and how this is must depend upon the particular circumstances. If there is considerable delay, and yet there is satisfactory reason for it in the opinion of the jury, such as that she was under the offender's control or influence, it may not detract from her credit.—*1 East P. C., 445; Higgins v. The People, 58 N. Y., 377.*

Looking at the record as it is shaped in regard to what was given in evidence, and considering the charge and the

exception, there appears to be no foundation for any claim that the charge was unfair. It might have been more full, but Turner's counsel did not ask it, and the paragraph excepted to, when read in connection with other portions, does not appear to be objectionable on any ground suggested.

It is further objected that the judge mislead the jury in what he said concerning a claim by Turner's counsel that the credibility of the prosecutrix was destroyed by her denial on cross-examination of having given certain testimony before the justice. It would seem that while being cross-examined on the trial she "denied having given certain testimony before the justice," and that at a later stage of the trial Turner's counsel read her deposition and "claimed" that it tended to contradict and impeach her, and that in regard to this claim the judge observes: "The jury should consider the statement from the justice, containing Emma Thompson's evidence, with reference to the circumstances under which it was taken. They should remember that the exact words are not always written down, and that it is very difficult to produce on paper a full statement in the words and manner of a witness." The argument against this remark assumes that she denied having sworn to something which the deposition in fact contained, and something, too, of substance, whereby she stood self-contradicted in such a way as to affect her credibility, and that the tendency of the charge was to alleviate the effect of this upon untenable grounds. It is a sufficient answer that the bill of exceptions does not show that the deposition contained in fact what she denied having testified to before the justice, or that there was any substantial variance between her testimony at the trial and her deposition. Neither her deposition nor cross-examination at the trial is set out, and we are not informed in any way to what her denial related, nor that her deposition contained what she denied having sworn to, or even that in point of fact there was any real disagreement at all; and we cannot

presume that there was a material variance, a variance going beyond unimportant matters and involving substantial contradiction under oath.

Whether there was any basis for the "claim" made by the plaintiff in error is not apparent, and nothing is shown to convict the charge of any injurious tendency. It was incumbent upon the plaintiff in error to bring the facts, or sufficient facts, upon the record in some form so as to show that the charge applied to a case in which, to say the least, it may have operated to his legal prejudice.

One more objection remains to be noticed. In the sixteenth proposition of the charge the judge said : "It makes no difference in the case what may have been the relations of the girl before she went to defendant's house, or what she may have done since; her character, good or bad, cannot exempt him, if you find that he committed the crime of rape in the sugar bush as alleged." There seems to have been no suggestion to the judge to modify or change this proposition in any way. Turner's counsel merely excepted "to that part of said charge which says it makes no difference what the complaining witness did before or since the act." But without dwelling on the force of the exception or pausing to question its scope or efficacy as matter of practice, it may be assumed to apply either to the passage mentioned or to the whole proposition and to be sufficient to present a point. Still the sentence mentioned in the exception, and to which the allegation of error is confined, must be read with the rest of the proposition, and the proposition must be read with the rest of the charge. The objection to the charge, as understood, is that it was equivalent to a direction that the jury might find whether Turner was guilty or not without regard to facts and circumstances bearing on the truth and accuracy of the statements of the prosecutrix, and that if they should find him guilty, such facts and circumstances would then be of no consequence. The argument does not represent the charge fairly. The question of the credibility of the prosecutrix and the "reason-

ableness and probability" of her statement had been just before explicitly submitted to the jury, and certainly the judge did not intend to recall or destroy the force of that submission, and could not have been understood by the jury as meaning to do so.

The instruction now in question did not concern credibility at all. Viewed in connection with other matters charged, the meaning of the judge is obvious enough. What he meant, and what the jury unquestionably understood him to mean, was, that if the imputed fact was committed, it was equally a criminal fact, equally a rape, whether the character of the prosecutrix was good or bad. He certainly did not mean that if the evidence would be insufficient to convict on account of its impairment by the bad character of the prosecutrix, but would be sufficient if her bad character was not allowed to diminish the force of the people's evidence, that the jury might decide upon Turner's guilt without allowing her badness of character to impair the evidence, and if satisfied of his guilt, then ignore all the facts concerning her character.

No error being shown, the judgment should be affirmed.

The other Justices concurred.